Commonwealth *v.* Sharpe, Appellant.

Argued November 9, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Louis W. Fryman,* with him *Steven J. Hartz,* and *Becker, Fryman & Ervais,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *William H. Wolf, Jr.* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 4, 1972:

On March 22, 1968, following a jury trial in the Philadelphia Court of Oyer and Terminer, appellant was convicted of murder in the first degree for the killing of one Helen Robinson. The jury fixed the penalty at death. Post-trial motions were argued and denied by the court en banc. From the imposition of sentence, appellant perfected this appeal.

During the morning of February 16, 1967, the police were summoned to a home at 6201 Ellsworth Street, Philadelphia. There they discovered the victim in a second floor bedroom, covered with blood from numerous wounds about the head and suffering from a bullet wound in the side. Mrs. Robinson, conscious at the time, gave the police a description of her assailant. Minutes later the same officers noticed appellant walking approximately five blocks from the scene. The police arrested appellant and a search of the bag he was carrying revealed a handgun containing one spent round and five live rounds, a box of cartridges, a pinch bar and a screwdriver. At police headquarters, appellant was questioned and gave a confession in which he admitted he had broken into the house but contended

the shooting was accidental. The victim died shortly after being removed to the hospital. The cause of death was loss of blood caused by the bullet wound in her side.

Appellant raises five main contentions of error which shall be treated seriatim.

Initially, appellant argues the lower court committed reversible error by refusing to caution the jury with respect to the meaning of the phrase "in the street" contained in appellant's confession, which was admitted into evidence and read to the jury. When questioned by the police concerning the duration of his drug habit, appellant answered "ever since I was ten or eleven. At least the time I spent in the street."

The rule is well established that evidence of an unrelated crime is inadmissible to prove commission of the offense for which the defendant is currently charged. *Commonwealth v. Chalfa,* 313 Pa. 175, 169 A. 564 (1933) ; *Commonwealth v. McKenna,* 206 Pa. Superior Ct. 317, 213 A. 2d 223 (1965) ; *Commonwealth v. Sindel,* 205 Pa. Superior Ct. 355, 208 A. 2d 894 (1965). Appellant contends the phrase "in the street" is a well-known expression indicating time spent out of prison and, consequently, to admit the phrase absent cautioning instructions permitted the jury to surmise that appellant had committed other crimes. We do not agree. We have serious doubts whether any of the jurors were aware of the meaning appellant would have us place on these three words. Appellant admits the phrase is commonly used by habitual offenders. With the phrase enjoying such limited exposure, the court below was correct in refusing to insert cautionary instructions. As the court below points out, to single out this isolated phrase for special instructions "would only serve to confuse the jury and perhaps lend meaning not necessarily inherent in the phraseology used."

Appellant next contends he was irreparably prejudiced when, during its charge to the jury, the court below allegedly remarked: "The Defendant, by that statement, of course, *unequivocally put himself into the chair. . . ."* (Emphasis added) Were such a comment made, we would agree that the trial judge had invaded the province of the jury and violated appellant's right to trial by jury. *See, Commonwealth v. Archambault,* 448 Pa. 90, 290 A. 2d 72 (1972); *Commonwealth v. Motley,* 448 Pa. 110, 289 A. 2d 724 (1972). However, the exact issue confronting this Court is whether, in fact, the alleged comment was uttered.

Following submission of post-trial motions, a transcript of the proceedings was filed with the court below. The trial judge reviewed the transcript and notified counsel for appellant of what he, the trial judge, believed to be an error therein. Approximately one and one-half years later, August 22, 1969, additional and supplemental reasons for a new trial were filed, raising the alleged comments and reference is made to the words noted above. Oral argument on appellant's posttrial motions was heard on October 3, 1969, at which time the Commonwealth requested the court en banc to conduct a formal hearing pursuant to the Act of May 11, 1911,[1] and to correct the record prior to it being certified. The special hearing was conducted on April 2, 1970, at which time the official court stenographer who transcribed the charge[2] testified that, in his opinion, the word "chair" was not a fingering error on his part. Following the hearing, the court permitted the record to be amended to read "into the affair."

---

[1] Act of May 11, 1911, P. L. 279, §4, 12 P.S. §1199.

[2] The regular court stenographer who transcribed the voir dire, opening remarks and the testimony of witnesses became ill and could not continue. He was replaced by another stenographer who only recorded and transcribed the charge, the subject of the instant controversy.

For the following reasons, which in no way impugn the integrity of the court stenographer, it is our opinion the court below was correct in allowing the correction: 1. The alleged comment followed the trial judge's reference to the effect of appellant's admission that he had broken into the deceased's apartment, found her sleeping, she woke up and became hysterical and, during a struggle, the gun accidentally discharged. In the context of the entire statement, the word "chair" makes no sense whatsoever. 2. In the paragraph immediately preceding the alleged comment, the trial judge twice used the word "affair" when referring to the incident.[3] 3. It is admitted that neither counsel for appellant nor the District Attorney heard the word "chair" mentioned by the court. 4. The trial judge denies ever using the word "chair," contending the word was "affair." 5. No exception, aside from a general exception to the charge, was taken. We point this out, not so as to preclude appellant from advancing this allegation of error, but to add to the cumulative evidence that the word "chair" was not mentioned by the trial judge.

The case of *Commonwealth v. Kulik,* 420 Pa. 111, 216 A. 2d 73 (1966), cited by the appellant, is clearly distinguishable. In *Kulik,* the trial judge failed to proceed under the Act of 1911, but rather inserted in his own handwriting amendments to the transcribed charge whereas, in the instant case, the court below strictly complied with the Act of 1911. Based on our review of the entire record, the court below did not err by allowing the correction of the record.

---

[3] The word "chair" appears on p. 901 of the record. On p. 900 appears the statement ". . . that on the day of this *affair*, about 5:30 that day. . . ." On pp. 900-01 appears the statement "But the basis of that aspect of this case was that it was a confession by the defendant of his guilt and participation in this *affair*." (Emphasis added)

Appellant next contends the articles found in his tote bag and later admitted into evidence were the fruit of an illegal arrest and should have been suppressed.[4] The pertinent facts surrounding appellant's arrest may be briefly summarized.

The police arrived at the Robinson home at approximately 10:55 a.m. The victim, though mortally wounded, was conscious and described her assailant as a Negro male, approximately forty years old, 5'9" tall, wearing a dark coat and perhaps a dark hat. Other police arrived, and the two officers, Lowery and McGee, left the house to cruise the area. As they turned a corner one block from the victim's home, they noticed a man walking about four blocks away. The officers testified there were no other pedestrians about. As they approached, the officers noticed the man was wearing a brown coat and a grayish hat and carrying a blue overnight bag. The appellant had turned up a walkway leading to a dwelling house when the officers parked their patrol car and Officer Lowery called to the appellant to come down the steps. The officers left their vehicle and met appellant halfway down the steps, at which time they noticed he was perspiring heavily and had what the officers thought was a spot of blood on his face. The officers frisked the appellant and found nothing; they then made inquiry as to the contents of the bag. When the appellant did not answer, one of the officers requested the bag, to which appellant replied, "I won't give you the bag. I'll show you what's in the bag." At this point the officers grabbed the bag, a scuffle ensued, the appellant was restrained and visible in the partially unzipped bag was the handle of a revolver.

---

[4] The articles were admitted into evidence following a pretrial suppression hearing mandated by *Jackson v. Denno*, 378 U.S. 368 (1964), wherein appellant's motion to suppress the seized evidence was denied.

An arrest without a warrant is justified if based on probable cause, *i.e.*, facts and circumstances, within the arresting officer's knowledge and of which he had trustworthy information, sufficient to warrant a man of reasonable caution in the belief that the arrested person has committed a crime. *See, Commonwealth v. Brayboy,* 431 Pa. 365, 246 A. 2d 675 (1968).

From all the circumstances, the arresting officers had probable cause to believe Sharpe had committed a crime. The police spotted the appellant minutes after leaving the victim's home. The appellant fit the description given the officers by Helen Robinson, although the appellant was several inches taller. When the appellant turned on the steps following the officer's call, the police noticed he was perspiring heavily, though it was the month of February and the weather was clear and cool. *Commonwealth v. Berrios,* 437 Pa. 338, 263 A. 2d 342 (1970), and *Commonwealth v. Hicks,* 434 Pa. 153, 253 A. 2d 276 (1969), are distinguishable. In both cases the descriptions did not match, except the defendants were described as being Negro and Puerto Rican, respectively. The time interval was more remote; in *Berrios* it was twenty minutes; in *Hicks,* at least thirty minutes. In the instant case, the appellant was spotted within minutes after the officers had left the victim's home with a description of the attacker. The arrest being lawful, it necessarily follows that the seizure of the challenged evidence was also constitutionally valid as an incident thereto. *See, Commonwealth v. Brayboy,* 431 Pa. 365, 246 A. 2d 675 (1968), and cases cited therein.

Appellant fourthly contends his confession, admitted into evidence, was not preceded by the required *Miranda*[5] warnings and was the product of police coercion.

---

[5] *Miranda v. Arizona,* 384 U.S. 436 (1966).

The testimony at the suppression hearing with respect to appellant's initial charge, *i.e.*, failure by the police to warn Sharpe of his constitutional rights, reveals the following: Sharpe arrived at police headquarters at approximately 2:30 p.m. A Detective Hoffman testified that at 2:45 p.m. he introduced himself to appellant and advised him of his rights. Detective Hoffman further testified that appellant acknowledged his understanding of his rights. Following this, an intelligence summary was taken, at the conclusion of which appellant was left alone for about thirty minutes. At about 5:00 p.m., he requested permission to speak with his wife. Following the phone conversation, the appellant ate dinner and was questioned at approximately 5:30 p.m., after again being informed of his rights. A statement was taken, concluded at approximately 7:30 p.m., whereupon the appellant read the statement, made several corrections, initialed each page, and then orally read the statement into a tape recorder. The appellant then met with his brother for approximately one and one-half hours. At the hearing, the appellant testified that he was not given any warnings at 2:45 p.m. or that he could not remember receiving the warnings.

Appellant's coercion complaint was also considered at the suppression hearing. Detective Hoffman testified that appellant had told him of his drug habit and that he was worried should he become ill whether he would be afforded medical attention, to which Detective Hoffman stated that medical attention would be provided if appellant should request it. Detective Hoffman further testified that the appellant appeared calm, spoke coherently and did not appear to be suffering from withdrawal. Sergeant Branche, who recorded appellant's statement, similarly testified. The appellant's testimony was completely contrary.

The suppression judge found that appellant had been fully warned of his *Miranda* rights and his subse-

quent confession was both voluntary and intelligently made. The correctness of this conclusion is subject to our review. The question is one of fact initially to be determined by the trial court and where, as here, the suppression court's findings have ample support in the record, we cannot say that the court erred as a matter of law in concluding the confession was admissible. *Commonwealth v. Harmon,* 440 Pa. 195, 269 A. 2d 744 (1970); *Commonwealth v. Tabb,* 433 Pa. 204, 249 A. 2d 546 (1969).

Appellant's final contention is that the imposition of the death penalty violates the Eighth Amendment's ban against cruel and unusual punishments as applied to the States through the Fourteenth Amendment. In *Furman v. Georgia,* 408 U.S. 238 (1972), the United States Supreme Court recently held that the imposition of the death penalty under statutes such as the one pursuant to which the death penalty was imposed upon appellant[6] is violative of the Eighth and Fourteenth Amendments. Accordingly, appellant's sentence of death may not now be imposed. *See, Moore v. Illinois,* 408 U.S. 786 (1972); *Commonwealth v. Bradley,* 449 Pa. 19, 295 A. 2d 842 (1972).

The conviction of first-degree murder is affirmed. The sentence of death is vacated and appellant is sentenced to life imprisonment.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the consideration or decision of this case.

---

[6] Act of June 24, 1939, P. L. 872, §701, *as amended,* 18 P.S. §4701.