**UNITED STATES of America ex rel. Charles PATRICK**

v.

**H. E. RUSSELL, Superintendent.**

**Misc. No. 3579.**

United States District Court, E. D. Pennsylvania.

Jan. 18, 1973.

David Rudovsky, Philadelphia, Pa., for plaintiff.

Judith Dean, Asst. Dist. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

WEINER, District Judge.

Relator, Charles Patrick, has filed the present petition for a writ of habeas corpus seeking relief from a 1960 conviction for first degree murder arising from the deaths of Lula Mae Overton and her ten year-old daughter, Gloria Louise Overton. Patrick was tried in the Philadelphia Court of Quarter Sessions on the two bills of indictment, May Sessions, 1960, Nos. 698, 699, was found guilty by a jury on both counts, and was sentenced to life imprisonment on No. 698 and to death on No. 699. A direct appeal was then taken to the Pennsylvania Supreme Court which remanded the matter for a hearing to determine the voluntariness of defendant's confession pursuant to the United States Supreme Court's decision in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12

L.Ed.2d 908 (1963). Commonwealth v. Patrick, 416 Pa. 437, 206 A.2d 295 (1965). On remand, the *Jackson-Denno* hearing was conducted and the original trial judge concluded that the confession was voluntary and admissible. On September 27, 1966 the Pennsylvania Supreme Court affirmed this decision. On November 3, 1966, the State Supreme Court granted a rehearing to consider additional claims of the defendant relating to the voluntariness of his confession and rejected these contentions. Commonwealth v. Patrick, 424 Pa. 380, 227 A.2d 849 (1967).

The instant petition for a writ of habeas corpus was filed with this Court on June 14, 1967 and an evidentiary hearing was held before the late Judge Harold K. Wood on September 28, 1967. Subsequently, an amended petition for a writ of habeas corpus was filed on behalf of the relator, followed by an amended answer and a second amended petition. Due to the fact that a number of issues raised by the petitions were directly related to the anticipated ruling of the United States Supreme Court on the constitutionality of capital punishment, Judge Wood indicated that no further action would be taken pending that decision. The matter was transferred to this Court for all further proceedings in November of 1972.

Relator alleges two grounds in support of his petition: (1) that, consistent with the decision of the Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), this Court should vacate his sentence of death and impose a sentence of life imprisonment; and (2) that the trial court's instructions to the jury concerning the voluntariness of the relator's confession and the standards applied by the trial court in determining voluntariness at the *Jackson-Denno* hearing were in violation of his rights under the Fifth and Fourteenth Amendments.

## THE DEATH PENALTY

The Commonwealth has requested this Court to delay its decision upon relator's request for vacation of his death sentence pending action by the Third Circuit Court of Appeals on the petition of the Commonwealth in the case of United States ex rel. Phelan v. Brierly, C.A. No. 18,880 (3d Cir., filed August 14, 1972). The Commonwealth there requested the Circuit Court to remand the matter to the District Court so that an evidentiary hearing could be held and the Commonwealth given an opportunity to present evidence on the application of the death penalty in Pennsylvania in order to establish that capital punishment as applied in this State is not violative of the Supreme Court's decision in Furman v. Georgia, *supra*.

Relator opposes this request and asks this Court for an immediate vacation of the death sentence.

We are not inclined to grant a stay in this case as is urged by the Commonwealth. As is pointed out by the brief of relator in opposition, the District Attorney of Philadelphia has similarly argued the constitutionality of the imposition of the death penalty in Pennsylvania before both the United States Supreme Court and the Pennsylvania Supreme Court. In both instances, the Commonwealth's arguments were rejected. In the face of such explicit denials of that very argument which is now made by the District Attorney, we fail to see any necessity for unduly delaying relator's right to have his proper sentence determined by the appropriate tribunal.

Insofar as the request of relator to have us vacate his death sentence, this Court is not disposed to pass on that question at this time. The relationship which exists between the state and federal judiciaries is one of mutual respect. Although at certain times it becomes necessary for a federal court to consider and to pass upon matters which are primarily within the sphere of the state courts, particularly in the habeas corpus area, it has long been recognized that those occasions should be limited by extreme necessity. As a result, an ex-

tensive body of law has been developed by the courts to govern this relationship and the resultant concept of exhaustion of state remedies has emerged.[1]

 Exhaustion is not in itself a limitation upon the power of the federal courts to act, *see, e. g.,* Giles v. Maryland, 386 U.S. 66, 81, 87 S.Ct. 793, 17 L. Ed.2d 737 (1967). It is, in fact, the voluntary recognition by these courts that the States should be permitted a full opportunity to administer their criminal justice systems before federal intervention to protect federal rights takes place. *See* Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1962); Johnson v. Hoy, 227 U.S. 245, 33 S.Ct. 240, 57 L.Ed. 497 (1912). These considerations of comity, as was noted by Mr. Justice Brennan in Fay v. Noia, *supra,* 372 U.S. at 418, 83 S.Ct. at 838, envisage "only the postponement, not the relinquishment, of federal habeas corpus jurisdiction."

Exhaustion thus does not define power, but is a concept relating to the "appropriate exercise of power." Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455 (1939). Clearly this Court has the power to vacate the death sentence imposed upon relator by the state court, as is evident from the numerous rulings of the United States Supreme Court and lower federal courts vacating similar sentences. *E. g.,* Phelan v. Brierly, 408 U.S. 939, 92 S.Ct. 2875, 33 L.Ed.2d 762 (1972); Scoleri v. Pennsylvania, 408 U.S. 934, 92 S.Ct. 2852, 33 L. Ed.2d 747 (1972); Newman v. Wainwright, 464 F.2d 615 (5th Cir. 1972); Sims v. Eyman, (9th Cir. No. 22,242, August 23, 1972); Boulden v. Capps, (M.D.Ala. No. 2303–N, July 21, 1972);

Morford v. Hocker, (D.Nev. No. R–2174, September 7, 1972).[2] But we cannot discern any compelling reason to act in this matter until the state courts have had the opportunity to correct the sentence. Indeed, the Pennsylvania Supreme Court has implemented the *Furman* decision and vacated death sentences on five occasions, Commonwealth v. Ross, Pa., 296 A.2d 629 (1972); Commonwealth v. Lopinson, Pa., 296 A.2d 524 (1972); Commonwealth v. Sharpe, Pa., 296 A.2d 519 (1972); Commonwealth v. Bradley, Pa., 295 A.2d 842 (1972); Commonwealth v. Scoleri, Pa. (Nos. 252, 274–276, January Term, 1967, August 23, 1972). We are certain that the lower state courts will follow this lead with great dispatch.

 The state courts are undoubtedly the appropriate tribunal to grant relief to relator in this instance. If such relief is not forth-coming, the avenues to the federal court are still open. But until this Court is shown that state process is ineffective to protect the rights at issue, we must insist that the state judiciary be first afforded the opportunity to deal with a situation which is otherwise solely within its own judicial sphere.

## CHARGE TO THE JURY ON THE VOLUNTARINESS OF RELATOR'S CONFESSION

Relator next contends that the trial court's enunciation of the substantive standards upon which the jury was to determine the voluntariness of the confession was constitutionally deficient. The trial court's charge to the jury on the confession read, in relevant part, as follows:

An important factor that you must consider is the question of the confes-

---

1. The doctrine requiring the exhaustion of state remedies has been codified in 28 U.S.C. § 2254: "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circum-

stances rendering such process ineffective to protect the rights of the prisoner."

2. Following its decision in Furman v. Georgia, *supra,* the Supreme Court, on June 29, 1972 vacated the judgments in 118 capital cases insofar as that judgment left the death penalty undisturbed. *See* Stewart v. Massachusetts and companion cases, 408 U.S. 845, 932–940, 92 S.Ct. 2845–2879, 33 L.Ed.2d 744–765 (1972).

sion, which the Commonwealth has presented in this case. The law is zealous, as I have said, to preserve the rights of the accused, and if a confession is obtained by coercive measures, for example, such a confession would violate due process of law. If the accused is subjected to unusual treatment that might be cruel, long-drawn out, that also is a matter to be taken into consideration. *There are others, but I don't think it is necessary for me to go into them at this time for the reason that the defendant says here, "I never made this statement, that is not my signature on the statement," and, therefore, we cannot very well determine whether there was coercive measures because he said, "I never made the statement."* This is the important thing in this case, so far as the alleged confession is concerned. That becomes a matter of you passing upon the credibility of the witnesses with reference to the taking and making of this alleged confession.

. . . . . .

We do not count the number of witnesses on one side against the number of witnesses on the other side. We determine only the credibility of the witnesses on one side and the credibility of the witnesses on the other side in *determining what you believe with reference to this confession.* If you believe the Commonwealth's witnesses, then, you have a situation where you could have a confession without coercive measures, without harassment, and the other things that ordinarily we would consider *because they made no such claim for anything of this character.* So, you would have a confession, if you so believe the Commonwealth's witnesses, and a confession, members of the jury, is a voluntary admission of guilt of an offense charged. It is the strongest evidence of guilt when, and only when, it is voluntary. If you believe it was made, then I say it was voluntary in

this case, or submit to you that it was, because, members of the jury, *no* one will voluntarily jeopardize his life or liberty by confessing to an untruth in absence of an extraordinary motive. (N.T. 340–342) [3] (emphasis added).

■ Despite the fact that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1963) are not to be applied retroactively, the Supreme Court has held that non-retroactivity will not preclude persons whose trials took place prior to these decisions from invoking these same safeguards as part of their voluntariness claim. Johnson v. New Jersey, 384 U.S. 719, 730, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1965). And the Supreme Court has, in numerous instances, reversed convictions in pre-*Miranda* cases where determinations of voluntariness were not made with adequate reference to these standards. In Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1965), the defendant, an impoverished Negro with little education and an extremely low level of intelligence, was kept incommunicado by the police for 16 days in a lockup cell used generally for short term detentions. He was fed a limited diet, was interrogated for two to three hours each day, and was subjected to numerous ruses by the police in order to convince him to confess. The Court concluded that the confessions were "the unvoluntary end product of coercive influences and are thus *constitutionally inadmissible in evidence.*" Id. at 752, 86 S.Ct. at 1770.

In Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1966), the accused was held in custody for 38 hours prior to arraignment, permitted little sleep and very little food, had no contact with a lawyer, and appeared sick to the police. After making one confession, he was still unrepresented by counsel, was interrogated frequently over a 3 day period, was driven over 600 miles and administered several polygraph tests, was

---

3. N.T. refers to Notes of Testimony of the trial in November, 1963.

detained in at least three different police buildings, had very little to eat, and had little contact with anyone other than police. The Court ruled that the confessions, given under such circumstances, were involuntary.

Similarly, in Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1967), the Court, after reviewing the "totality of the circumstances," which included the incommunicado custody and constant questioning of the defendant for 30 to 48 hours and the continual denial of counsel for over two days, ruled that the confession was inadmissible and involuntary.

Relator contends that, as in the above cases, the employment of the required standards for determining voluntariness in his case was necessary and that the failure of the trial court to so charge the jury denied him due process of the law. Major reliance is placed by relator on the Supreme Court's decision in Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1960). In *Rogers*, two confessions which defendant claimed had been obtained by coercion were admitted in evidence. Both the trial court and State Supreme Court determined that the confessions were admissible since they were "reliable" and affirmed the conviction. The Court, in reversing the decision, ruled that the defendant had been denied his due process rights under the Fourteenth Amendment due to the failure of the state courts to apply proper standards in determining voluntariness. *Id.* at 540, 81 S.Ct. 735. Relator would have us extend *Rogers* to a situation where a jury is not informed and does not consider the requisite due process standards on which to determine voluntariness. We respectfully decline to do so.

The blind application of abstract principles in the courtroom is often destructive of the basic concepts of justice upon which our legal system is founded.

Thus, in the case at bar, it becomes necessary for this Court to examine and to weigh the "totality of the circumstances" present in relator's case rather than to simply superimpose earlier holdings upon the instant facts.

In each pre-*Miranda* case where the Supreme Court later found that confessions were involuntary and thereby reversed the conviction, there was present substantial evidence of blatant police disregard for the constitutional rights of the defendants. *See, e. g.,* Darwin v. Connecticut, *supra*; Clewis v. Texas, *supra*; Davis v. North Carolina, *supra*. To the contrary, in Frazier v. Cupp, 394 U.S. 731, 737, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1968), the Court ruled the confession voluntary after noting that the defendant had only been questioned for two and a half hours, had been given only a brief description of his constitutional rights, and had been denied access to a lawyer although he had indicated that he wished to consult with one prior to further questioning.

A situation similar to *Frazier* exists in the case before us. From the testimony elicited at trial, it appears that Patrick freely came to the police station upon discovering that the police were looking for him. (N.T. 258–60). Interrogation began around 12:30 A.M. on March 27, 1960 (N.T. 189), the bulk of Patrick's confession was taken down by 2:25 A.M., Patrick then underwent a 20 minute physical examination which revealed that he had not been abused or harmed (N.T. 182), a few final questions were asked by the police, and the confession was signed and initialed at 2:50 A.M. (N.T. 187). Although Patrick stated at the *Jackson-Denno* hearing (N.T.J.D. 54) [4] and at the habeas corpus hearing held by Judge Wood that he was in a groggy condition during the interrogation (N.T.H.C. 14) [5], the testimony of the District Attorney who interrogated Patrick directly contradicted

---

4. N.T.J.D. refers to Notes of Testimony of the Remand *Jackson-Denno* hearing held on June 24, 1965.

5. N.T.H.C. refers to Notes of Testimony of the habeas corpus hearing held before Judge Wood on September 28, 1967.

this statement (N.T.J.D. 62). Patrick's other contention that he was refused access to a lawyer also was not mentioned at the original trial and is similarly contradicted by the interrogating officer at both the *Jackson-Denno* and habeas hearings.

The only indication during the course of the trial that relator was contesting the voluntariness of the confession was one objection at the time the confession was introduced that the defendant had not been warned of his privilege against self-incrimination (N.T. 168–69). The major, and almost the *sole* thrust of the defendant's attack on the confession, consisted of that very point on which the jury was indeed charged: whether or not the confession in evidence had been made and signed by Patrick (N.T. 268–69, 271–77).

Under the theory of review in this type of case, as defined by the Supreme Court, see Darwin v. Connecticut, *supra*, 391 U.S. at 349, 88 S.Ct. 1488; Davis v. North Carolina, *supra*, 384 U.S. at 740–741, 86 S.Ct. 1761, and in light of the facts established at trial, the testimony at the subsequent *Jackson-Denno* hearing, and the habeas corpus hearing, and our review of the "totality of the circumstances" which surrounded the taking of the confession, we cannot discern any justification for the substitution of our judgment for that of the state courts. The rationale for the Supreme Court's decisions in this area was succinctly expressed by Mr. Justice Frankfurter in Rogers v. Richmond, *supra*, 365 U.S. at 540–541, 81 S.Ct. at 739:

> Our decisions under [the Fourteenth Amendment] have made clear that convictions following the admission into evidence of confessions which are involuntary . . . cannot stand. This is not so because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system—a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth.

*See* Miranda v. Arizona, *supra*; Blackburn v. Alabama, 361 U.S. 199, 206–207, 80 S.Ct. 274, 4 L.Ed.2d 242 (1959); Rochin v. California, 342 U.S. 165, 172–174, 72 S.Ct. 205, 96 L.Ed. 183 (1951). But this case is totally devoid of any suggestion that even a minimal amount of activity of the sort condemned time and again by the Court was present. Certainly, if *Miranda* had been decided prior to trial, the instant conviction would likely be reversed, Davis v. North Carolina, *supra*, 384 U.S. at 739, 86 S.Ct. 1761. However, this is not the posture in which we review this matter and we can see no necessity to advance such protective measures as were delineated in *Miranda* and in the above cited cases.

■ Therefore, given the total facts and circumstances of this case, we find no prejudicial errors present in the disputed charge to the jury. Hindsight might suggest that a more detailed charge on the elements of voluntariness would have been proper if not imperative. But it would be a serious example of judicial overreaching for this Court to impose such a literal application of then non-existent law upon a trial judge who had no reason to believe either that such standards might be necessary or that such questions were at issue in the matter before him. It appears quite clearly to this Court that the major question at issue with regard to the confession was a factual question which did indeed turn upon credibility and that the charge given to the jury was, therefore, correct and proper under all the relevant circumstances.