496 A.2d 1144

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Charles Eugene CROSS, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 11, 1984.

Decided Aug. 14, 1985.

Reargument Denied Nov. 12, 1985.

Bernard Rabik, Beaver, for appellant.

Edward Tocci, Dist. Atty., John Lee Brown, Jr., Asst. Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Charles Eugene Cross was found guilty by a jury of murder of the first degree for the killings of Denise Lucic and her two children, Danielle Lucic, aged seven (7) years and John Lucic, Jr., aged three (3) years. After the jury rendered the verdicts of guilty, the required sentencing hearing was conducted on March 3, 1982.[1] At the sentenc-

---

1. 42 Pa.C.S. § 9711(a)(1) provides: (a) Procedure in jury trials—(1) After a verdict of murder of the first degree is recorded and before the jury is discharged, the court shall conduct a separate sentencing

ing hearing, the Commonwealth presented evidence seeking to establish two of the aggravating circumstances listed in 42 Pa.C.S. § 9711(d). These were that the defendant had a significant history of felony convictions involving the use or threat of violence to the person, Section 9711(d)(9); and that the defendant had been convicted of another Federal or State Offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable, Section 9711(d)(10).

Defense counsel presented evidence in an effort to establish four mitigating circumstances, specifically: (1) that the defendant had no significant history of prior criminal convictions, Section 9711(e)(1); (2) that the defendant was under the influence of extreme mental or emotional disturbance at the time of the offense, Section 9711(e)(2); (3) that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, Section 9711(e)(3); and (4) that there were other mitigating circumstances, Section 9711(e)(8).

After hearing the evidence, and deliberating thereon, the jury, finding that the two aggravating circumstances outweighed any mitigating circumstances, determined that the defendant be sentenced to death upon all three counts of murder. This direct appeal followed.[2]

For the reasons stated herein, we affirm Appellant's convictions of murder of the first degree, and uphold the sentences of death.

The evidence presented at the guilt stage of the trial established that on August 4, 1981, between the hours of 5:00 p.m. and 6:15 p.m., Denise Lucic and her two small children, Danielle and John Jr., were slain in their home at 1530 Duss Avenue in the Borough of Ambridge, Beaver County, Pennsylvania. Denise Lucic died as a result of

hearing in which the jury shall determine whether the defendant shall be sentenced to death or life imprisonment.

**2.** Pursuant to 42 Pa.C.S. § 9711(h)(1), a sentence of death shall be subject to automatic review by this Court.

first being strangled and then having her throat cut with a sharp knife or other instrument. Her son, John, Jr., died as a result of slashing wounds to the throat so deep that decapitation almost resulted. Her daughter, Danielle, died as a result of strangulation and stab wounds to the neck and chest. The stab wounds were caused by an instrument such as a screwdriver or ice pick.

The scene of these killings was the house where the victims lived with John Lucic, Sr., the husband and father of the victims. The Ambridge police arrived at the scene at 6:15 p.m. on August 4, 1981. The bodies of Denise and John, Jr., were discovered side by side on the floor of a small bedroom at the top of the stairs on the second floor. The bodies were covered with blood, and there was blood on the walls and ceiling of the room. The body of Danielle was found in a small adjoining bedroom with a blood-smeared pillow stuffed into her mouth.

Appellant raises numerous issues in his appeal. First, he challenges the sufficiency of the evidence to sustain a conviction of murder of the first degree.

The record presents the following tragic tale. Appellant and John Lucic, Sr. were employees of the F.D. Strano Company. Appellant was employed as a roofer and Lucic was a foreman. In the fall of 1980, the two had a work-related confrontation. On August 4, 1981, Appellant approached another employee, Raymond Ours, and told him he was going to kill Lucic's wife and children and asked Ours if he would help him do it. Ours refused, and told other members of the work crew what Appellant had said. At the end of the work day at 5:00 p.m., Appellant left work and went to the Lucic residence, which was about a ten minute walk from the F.D. Strano Company premises.

Two fellow employees observed Appellant at 6:00 p.m. coming from the direction of the Lucic residence, and running through a park in Ambridge, toward the F.D. Strano Company property. Appellant was very excited and he was not wearing his glasses. His hand was wrapped in a white rag and there were red stains on the back of his shirt which

appeared to be blood. When asked by the two co-workers what had happened, he replied that he had fallen off a ladder and hurt his nose. He then went into the F.D. Strano premises and into a bathroom at the back of the building. When he came out of the bathroom shortly thereafter, he was in an agitated condition and told one of the employees who had previously observed him that he had been to the Lucic house and had found the family with their throats slashed from ear to ear. He then said to the employee, "Please don't tell anybody." The employee with whom he was speaking advised him to go to the police. Appellant then walked one block to the Ambridge Police Station, arriving with what police observed as blood stains on his clothing, and took the police to the Lucic residence. After the police viewed the bodies and the premises, Appellant was placed under arrest, and advised of his constitutional rights.

The next day, a search warrant was obtained for the F.D. Strano building, and a utility knife was found in the rafters of the bathroom that Appellant had used the previous evening after coming from the Lucic house. The utility knife was one commonly used by workers at F.D. Strano to cut shingles, and was marked with the name "Cross" on it. It was identified as belonging to Appellant. Blood residue on the knife was identified by expert testimony as being a mixture of the blood of John, Jr., and Denise Lucic. Further expert testimony established that there was blood from all three victims on Appellant's shirt and pants. The pillow found on Danielle was sent to the F.B.I. Crime Laboratory in Washington D.C., and a fingerprint expert from that laboratory testified at trial that Appellant's palm print was on the pillow.

Appellant took the stand in his defense and testified that on August 4, 1981, he left work at 5:10 p.m. to go to the Lucic house to give an estimate for repair work on their bathroom. He stated that he had received a phone call a week or two earlier from a caller he assumed was Denise Lucic because the caller had asked for John Lucic. The

caller suggested that Appellant could give her a bid on repair work for her bathroom. Although he had never mentioned the phone call or the repair work to John Lucic, Sr., Appellant decided on August 4 to walk up to the Lucic house and make a bid. When he arrived at the Lucic house, he knocked and received no answer. The door was open and he went in and called out for Mrs. Lucic. Receiving no answer, he went upstairs and into a bedroom. There, he said, he found the bodies of Mrs. Lucic and the little boy covered with blood. He started to step over the boy to get to Mrs. Lucic when his knee gave way and he fell on top of the little boy. Next, he knelt beside Mrs. Lucic, picked her up and cradled her in his arms, checking for a pulse on her wrist and neck. Finding no pulse, he laid her back down.

He testified that, at this point, he broke down and cried. He reached for a handkerchief in his back pocket and when he pulled it out, his utility knife and a screwdriver that he had in his pocket came out and fell into a pool of blood on the floor. He picked up the knife and screwdriver and walked into the little girl's bedroom where he found her lying on the floor with a pillow stuffed in her mouth. Appellant testified that he removed the pillow and checked to see if she was breathing. There was no movement so he replaced the pillow "the way (he) found it."

He then returned to the bedroom where he had first found John, Jr. and Denise Lucic, and moved the bodies because "(he) figured (he'd) better put all the bodies back the way (he'd) found them." Appellant then testified that as he was going downstairs he fell down the steps and broke his glasses.

The jury found Appellant guilty on each of three counts of murder of the first degree, and the same jury determined that Appellant be sentenced to death on each count.

■ We find the evidence to be more than sufficient to sustain the jury's verdict of murder of the first degree. The evidence proved beyond a reasonable doubt that Appellant committed these murders. Furthermore, the evidence

proved beyond a reasonable doubt that Appellant committed these murders with premeditation and malice aforethought. As fact finders, the jury had the right to disbelieve Appellant's version of the murders.

Appellant next argues that the trial court erred in denying his suppression motion regarding two search warrants issued on August 4, and August 7, 1981. We disagree.

Both search warrants were issued after he was in custody in the Beaver County jail pursuant to a valid arrest. He was arrested and brought to jail on August 4. On that same date, the police obtained a search warrant, to be executed at night, to seize and search Appellant's clothing, hair samples, and fingernail scrapings and clippings.

Appellant contends that the items seized at night must be suppressed because the search warrant was facially defective. He claims that no reasonable cause is shown thereon to justify a nighttime search and seizure.[3] Appellant ignores the fact that he was in custody, pursuant to a lawful arrest, and that a search warrant was unnecessary to support the actions of the police.

In *Commonwealth v. Bundy*, 458 Pa. 240, 245–6, 328 A.2d 517 (1974), we held that the defendant's clothing, which he was wearing at the time of the arrest, could properly be seized as part of a search incident to a lawful arrest. Citing *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1968); *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *Commonwealth v. Sharpe*, 449 Pa. 35, 296 A.2d 519 (1972); *Commonwealth v. Brayboy*, 431 Pa. 365, 246 A.2d 675 (1968).

Furthermore, in *Commonwealth v. Hrynkow*, 457 Pa. 529, 330 A.2d 858 (1974), we applied the rationale of the United States Supreme Court in *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), which

---

**3.** Pennsylvania Rule of Criminal Procedure 2003(c) states:
(c) No search warrant shall authorize a nighttime search unless the affidavits show reasonable cause for such nighttime search.

upheld the warrantless search of clothing with the explanation that:

"... it is difficult to perceive what is unreasonable about the police examining and holding as evidence those personal effects of the accused that they already have in their custody as the result of a lawful arrest.

... In upholding this search and seizure, we do not conclude that the warrant clause of the Fourth Amendment is never applicable to post arrest seizures of the effects of an arrestee. But we do think that the Court of Appeals for the First District captured the essence of situations like these when it said in *United States v. DeLeo*, 1 Cir., 422 F.2d 487, at 493:

'While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape and *evidence*.'"
(Emphasis added).

■ With respect to the hair samples and fingernail scrapings and clippings, we feel that their seizure was so minor an imposition as to constitute only the slightest intrusion, if indeed such constituted an intrusion. A warrantless seizure of the hair samples and the fingernail clippings and scrapings was reasonable under the facts of this case to protect possible evidence connected with the foul deeds. The hair and fingernails could easily have been washed and brushed clean of any traces of relevant evidence.

■ Appellant's sole complaint about the August 7, 1981, warrant is that it is invalid since no testimony or evidence was presented in support of the warrant at the suppression hearing. This argument ignores the express language of Pa.R.Crim.P. 2003 which covers the requirements for issuance of search warrants and states:

"(a) No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority. The issuing authority, in

determining whether probable cause has been established, *may not consider any evidence outside the affidavits.* (Emphasis added).

(b) At any hearing on a motion for the return or suppression of evidence obtained pursuant to a search warrant, *no evidence shall be admissible to establish probable cause other than the affidavits provided in paragraphs (a)."* (Emphasis added).

Nothing outside the written search warrant affidavit may be considered in determining the existence of probable cause. *Commonwealth v. Luddy,* 281 Pa.Superior 541, 554, 422 A.2d 601, 608 (1980), (alloc. denied 2–18–81), cert. den. 454 U.S. 825, 102 S.Ct. 114, 70 L.Ed.2d 99. Appellant's contention that the affiant's testimony is required is therefore without merit.

Appellant's next arguments concern the constitutionality of Pennsylvania's Death Penalty Statute, 42 Pa.C.S. § 9711. Appellant generally argues that imposition of the death penalty pursuant to 42 Pa.C.S. § 9711 violates the prohibition against cruel and unusual punishments contained in the Eighth Amendment of the United States Constitution, and Article 1, § 13 of the Pennsylvania Constitution. The constitutionality of 42 Pa.C.S. § 9711 has been upheld under both the United States and Pennsylvania Constitutions in *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982) cert. den., 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 reh. den. 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983).[4]

Specifically, Appellant argues that the Pennsylvania Death Penalty Statute violates the Eighth Amendment prohibition against cruel and unusual punishments in that it represents a mandatory sentencing system. We find this argument to be without merit.

**4.** Nevertheless, Appellant contends that Pennsylvania's Death Penalty statute is not entitled to a presumption of constitutionality. This issue was fully addressed in *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d at 959–960, and need not be discussed again here.

■ We begin with the important requirement that a defendant receive an individualized sentence. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). However, while a death sentencing scheme must meet this requirement, it must also be designed to meet the mandates of *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), requiring that the sentencing scheme be designed as to avoid "a substantial risk that it [the death sentence] would be inflicted in an arbitrary and capricious manner."

"*Furman* mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976).

The Pennsylvania Legislature, in order to meet the requirements of *Furman*, the 1976 quintet of same-day United States Supreme Court decisions,[5] *Lockett v. Ohio*, and our Supreme Court's holding in *Commonwealth v. Moody*, 476 Pa. 223, 382 A.2d 442 (1977), enacted 42 Pa.C.S. § 9711, a sentencing formula designed to guide and limit the discretion of the sentencing jury as to avoid a totally arbitrary result while retaining with the jury the opportunity to give an individualized sentence where mitigation is found. To achieve this result, the Legislature formulated a system whereby the jury, after a finding of murder of the first degree, would consider aggravating circumstances of the crime and aspects of the defendant's character for which there was some evidence. The aggravating circumstances are contained in 42 Pa.C.S. § 9711(d), a list formulated by the Legislature to direct the jury as to which first degree

---

5. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 490 L.Ed.2d 974 (1976).

murderers would merit the death penalty. If one or more of the aggravating circumstances found in 42 Pa.C.S. § 9711(d) is found by the jury beyond a reasonable doubt, then the defendant merits the death penalty. The jury then considers the individual character of the defendant and the circumstances of his crime by considering mitigating circumstances including those contained in 42 Pa.C.S. § 9711(e), and any other evidence of mitigation the defendant wishes to present. If the jury after carefully weighing the evidence unanimously finds that the mitigating circumstances outweigh the aggravating circumstances, then the sentence must be life. If, on the other hand, the jury finds that the aggravating circumstances outweigh the mitigating circumstances, then the sentence must be death.

Appellant asserts that it is the very use of the phrase "must be a sentence of death" that renders this statute mandatory and therefore unconstitutional. We are not persuaded by this argument. In *Jurek v. Texas*, 428 U.S. 262, 271, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929 (1976), Mr. Justice Stevens stated:

> "A sentencing system that allowed the jury to consider only aggravating circumstances would almost certainly fall short of providing the individualized sentencing determination that we today have held in *Woodson v. North Carolina*, post, 428 U.S. 280, 303–305, 96 S.Ct. 2978, 2991 [49 L.Ed.2d 944 (1976) ]—Eighth and Fourteenth Amendments. For such a system would approach the mandatory laws that we today hold unconstitutional in *Woodson* and *Roberts v. Louisiana*, post. *A jury must be allowed to consider on the basis of all relevant evidence not only why a death sentence should be imposed, but also why it should not be imposed."* [6] (Emphasis added).

---

**6.** The "mandatory" death sentencing statutes that were held unconstitutional in *Woodson* and *Roberts v. Louisiana* provided for *automatic* sentences of death upon a finding by the jury of murder of the first degree. The plurality in *Woodson* and *Roberts v. Louisiana* referred to an automatic death penalty statute as "mandatory." *See Woodson*, 428 U.S. at 289, 96 S.Ct. at 2984, *Roberts v. Louisiana*, 428 U.S. at 331, 96 S.Ct. at 3005.

In *Lockett v. Ohio*, the United States Supreme Court struck down a death penalty statute which provided that once one aggravating circumstance was proved death was required unless one of three narrowly drawn circumstances was found.

■ In contrast, by its thorough list of mitigating circumstances combined with the opportunity for the defendant to go beyond the listed mitigating circumstances and introduce any other evidence of mitigation, the Pennsylvania Death Penalty Statute clearly meets the requirements of the Eighth and Fourteenth Amendments by providing the sentencing authority with the means to give an individualized sentence which considers the character and record of the defendant and the circumstances of his offense. Appellant's argument that 42 Pa.C.S. § 9711 represents an unconstitutional mandatory sentencing system is thus meritless.[7]

■ Appellant further contends that the death penalty statute does not provide for adequate appellate review. Appellant, however, offers no arguments as to why our review is inadequate, only that our review is constitutionally required to be adequate. 42 Pa.C.S. § 9711(h) clearly lists the requirements for review of a death sentence and this procedure has been upheld in *Commonwealth v. Zettlemoyer*, where we stated:

"This Court does not treat lightly its statutory and constitutional duties and will conduct an independent evaluation of all cases decided since the effective date of the sentencing procedures under consideration (Septem-

---

7. Appellant also contends that the Death Penalty Statute is unconstitutional because aggravating circumstance 6, 42 Pa.C.S. 9711(d)(6), encompasses *all* felonies instead of being limited to the most serious felonies enumerated for murder of the second degree in 18 Pa.C.S. § 2502(b). No evidence was presented at trial by the Commonwealth regarding aggravating circumstance six and the jury did not consider same in its determination that the defendant would be sentenced to death. "This Court has consistently held that a claimant cannot challenge the constitutionality of a statute abstractly; he is afforded such right only if it is sought to be enforced in his particular case." *Commonwealth v. Maxwell*, 505 Pa. 152, 168, 477 A.2d 1309, 1318 (1984). Since the jury never had to consider the application of aggravating circumstance six, the Appellant cannot now question it.

ber 13, 1978). This independent review mandated by 42 Pa.C.S. § 9711(h)(3)(iii) will utilize all available judicial resources and will encompass all similar cases, taking into consideration both the circumstances of the crime and the character and record of the defendant in order to determine whether the sentence of death is excessive or disproportionate to the circumstances." 500 Pa. 16, 454 A.2d at 961.

■ Another argument by Appellant concerns aggravating circumstance nine: "The defendant has a significant history of felony convictions involving use or threat of violence to the person." 42 Pa.C.S. § 9711(d)(9). The argument is that "significant history" is not defined and therefore this aggravating circumstance is unconstitutionally vague. *See Moody.* An identical argument was raised in *Commonwealth v. Beasley,* 504 Pa. 485, 475 A.2d 730, 737 (1984), and in dismissing that argument we stated:

> "Appellant further contends that certain language employed in the statute's enumeration of aggravating and mitigating circumstances, to be weighed by the jury in determining whether the death penalty should be imposed, are (sic) so vague as to invite arbitrary and capricious imposition of the death penalty. The challenged language includes, *inter alia,* the phrases *"significant history of prior criminal convictions"* (42 Pa.C.S. 9711(e)(1), "extreme mental or emotional disturbance" (42 Pa.C.S. § 9711(e)(4), "participation in the homicidal act was relatively minor," (42 Pa.C.S. § 9711(e)(7), "capacity of the defendant ... to conform his conduct to the requirements of law ..." (42 Pa.C.S. § 9711(e)(3). In reviewing an identical claim of vagueness asserted against the corresponding portion of the death penalty statute of the State of Florida, which employed virtually identical language, the Supreme Court of the United States rejected the vagueness claim, noting that a jury's evaluation of the aggravating and mitigating circumstances as enumerated, requires no more line drawing than is commonly required of a factfinder in any lawsuit.

*Proffit v. Florida,* 428 U.S. 242, 257, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913, 925–926 (1976). We agree." (Emphasis added).

■■■ Appellant further contends that the jury's finding of aggravating circumstance nine, 42 Pa.C.S. § 9711(d)(9), was not substantiated by the evidence. There was clear evidence presented at trial that the defendant had been convicted of rape and sodomy in Fairfax County, Virginia in 1974; Appellant admits in his brief that he was convicted and sentenced for these crimes. Appellant's sole argument on this point is that there was no evidence presented to the jury manifesting any extraordinary amount of force used in the rape. This argument is completely without merit. Rape by its very definition includes force. Force or the threat of force is an essential element of rape.[8] Based on the evidence presented at trial on the Virginia conviction for rape and sodomy, the finding of aggravating circumstance nine was substantiated.

Appellant's next arguments involve aggravating circumstance ten, 42 Pa.C.S. § 9711(d)(10). Appellant specifically contends that 42 Pa.C.S. § 9711(d)(10) is not clearly defined.[9] We disagree. The meaning of this provision is quite clear. It reads: "(10) The defendant has been convicted of another Federal or State offense, committed either before *or at the time of* the offense at issue, for which a

---

**8.** Virginia Code § 18.2–61 provides in pertinent part:
   **Rape.**—If any person has sexual intercourse with a female or causes a female to engage in sexual intercourse with any person and such act is accomplished (i) against her will, by force, threat or intimidation, . . . he or she shall, in the discretion of the court or jury, be punished with confinement in the penitentiary for life or for any term not less then five years.
   18 Pa.C.S. § 3121 provides in pertinent part:
   **Rape.** A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:
   (1) by forcible compulsion;
   (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution; . . .

**9.** This Court views with extreme disfavor Appellant's counsel's blatant attempt to mislead the Court by misquoting this section of the statute to read in their favor, in both the questions presented and body of their brief.

sentence of life imprisonment or death was imposable *or* the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense." (Emphasis added).

By putting in the language "or at the time of the offense," the Legislature clearly intended this aggravating circumstance to include the case of multiple murders. In *Commonwealth v. Travaglia*, 502 Pa. 474, 495–501, 467 A.2d 288, 298–300 (1983), we held that:

> "[t]he clear import of the first part of subsection (d)(10) is to classify the commission of multiple serious crimes as one of the bases upon which a jury might rest a decision that the crime of which the defendant stands convicted, and for which they are imposing sentence, merits the extreme penalty of death."

Additionally, we held that the term "convicted," as used here, means "found guilty of," not necessarily "found guilty of and sentenced." Id.; *See also, Commonwealth v. Leslie C. Beasley*, 505 Pa. 279, 479 A.2d 460, 464 (1984).

Appellant next contends that 42 Pa.C.S. § 9711(d)(10) is arbitrary and capricious merely because a jury may consider as an aggravating circumstance the fact that a defendant has been convicted of a Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment was imposable. Appellant specifically argues that if he had committed the crime of rape in Pennsylvania, a sentence of life could not have been imposable. This, however, does not make 42 Pa.C.S. § 9711(d)(10) arbitrary or capricious. The Legislature of Pennsylvania limited prior convictions presented to the jury to those involving the two greatest sentences a State or Federal jurisdiction could impose. The fact that the Commonwealth of Virginia treats the crime of rape more seriously than Pennsylvania does not prevent the

340

inclusion of the Virginia conviction as an aggravating circumstance.[10]

Appellant next contends that the trial court instructions regarding aggravating circumstance ten were prejudicial to the defendant, in that the court instructed the jury that aggravating circumstance ten concerns multiple homicides. As discussed above, aggravating circumstance ten does cover multiple homicides; therefore, the trial court's instruction was not prejudicial. Furthermore, we have carefully reviewed all the trial court's instructions and find no prejudice to the Appellant.

■ Finally, Appellant contends that the verdict form as executed by the jury was unclear and ambiguous. We disagree. The jury was presented with evidence of two aggravating circumstances 42 Pa.C.S. § 9711(d)(9) and (10). The jury was also presented with evidence of four mitigating circumstances, specifically 42 Pa.C.S. § 9711(e)(1), (2), (3), and (8). The jury unanimously found that both aggravating circumstances outweighed any mitigating circumstance, and clearly indicated this on the verdict form.

■ As is our duty under 42 Pa.C.S. § 9711(h),[11] we have carefully reviewed the sentence of death to determine

10. We regard as frivolous Appellant's argument that by permitting the jury to consider the Virginia conviction, our Legislature has acted illegally by allowing the Legislature of another state to determine a punishment for a specific criminal offense in Pennsylvania. This argument has no basis in law or in fact, and does not merit discussion here.

11. **Review of death sentence—**

(1) A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules.

(2) In addition to its authority to correct errors at trial, the Supreme Court shall either affirm the sentence of death or vacate the sentence of death and remand for the imposition of a life imprisonment sentence.

(3) The Supreme Court shall affirm the sentence of death unless it determines that:

(i) the sentence of death was a product of passion, prejudice, or any other arbitrary factor;

(ii) the evidence fails to support the finding of an aggravating circumstance specified in subsection (d); or

whether it was the product of passion, prejudice, or any other arbitrary factor. We find no such evidence.

Furthermore, as stated above, we find that the evidence fully supports the finding of an aggravating circumstance specified in 42 Pa.C.S. § 9711(d). Finally, pursuant to our statutory obligation to review death cases to determine whether the imposed sentence of death is "excessive or disproportionate to the penalty imposed in similar cases," we have conducted an evaluation of all convictions of murder of the first degree prosecuted under the Act of September 13, 1978, P.L. 756, No. 141, 42 Pa.C.S. § 9711, aided by the comprehensive study prepared at our order by the Administrative Office of Pennsylvania Courts. (See, *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984)). Our review reveals no excess or disproportionality in the sentence imposed in this case compared to the sentences imposed in other first degree murder cases where the evidence could support aggravating circumstances, such as herein, outweighing any shown mitigating circumstances.

Affirmed.

NIX, C.J., files a concurring opinion in which FLAHERTY, J., joins.

HUTCHINSON and ZAPPALA, JJ., concur in the result.

NIX, Chief Justice, concurring.

I agree with the majority that evidence of the use of an extraordinary amount of force during the commission of a violent felony is not required to satisfy aggravating circumstance (9), 42 Pa.C.S. § 9711(d)(9). However, contrary to the assertion of the majority, appellant also raises the issue of whether the evidence of his convictions of rape and sodomy arising from a single criminal episode is sufficient to establish a "significant history of felony convictions involving the use or threat of violence to the person." *Id.*

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

I would hold that under the reasoning of the majority in *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985), the aggravating circumstance in question was invalid.

In interpreting the statutory language it is essential that the underlying purposes of the death penalty statute be appreciated. "[T]he decision that capital punishment may be the appropriate sanction in extreme cases is an expression of the community's belief that certain crimes are themselves so grievous an affront to humanity that the only adequate response may be the penalty of death." *Gregg v. Georgia*, 428 U.S. 153, 184, 96 S.Ct. 2909, 2930, 49 L.Ed.2d 859 (1976) (plurality opinion). However the death penalty must be administered in a way that can *rationally* distinguish between those cases in which death is an appropriate sanction and those in which it is not. *Spaziano v. Florida*, 468 U.S. 447, ___, 104 S.Ct. 3154, 3163, 82 L.Ed.2d 340, 352 (1984); *see also Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Thus to prevent the arbitrary or capricious imposition of the death penalty the discretion of the sentencing jury must be carefully limited and channelled. *Gregg v. Georgia, supra* at 189, 96 S.Ct. at 2932.

Our legislature has provided guidance to juries in capital cases by identifying a limited number of factors relating to the nature of the crime or the character of the defendant which, in the legislature's judgment, not only engender extreme moral outrage but also strike at the very fabric of an ordered society. 42 Pa.C.S. § 9711(d). Only where one of these specific factors is established beyond a reasonable doubt may a sentence of death even be considered.

One of the factors the legislature has deemed to be such an aggravating circumstance is a "significant history" of violent felony convictions. 42 Pa.C.S. § 9711(d)(9). In *Commonwealth v. Goins, supra,* this Court concluded that the legislature intended the significance of the defendant's *history* of such convictions, rather than the serious nature

of a prior offense, to be the basis for a finding of that aggravating factor. Accordingly we interpreted the legislature's use of the plural "convictions" as deliberate and held that more than one conviction must be proven to establish a "significant history."

It is implicit in our holding in *Goins* that the sentencing jury or judge must determine whether the number of the defendant's prior convictions of crimes of violence is "significant." The plain meaning of the term "significant" is "having or expressing a meaning." Webster's New World Dictionary of the American Language (2d Coll. ed. 1982). Clearly the number of prior convictions must be sufficient for the sentencer to draw a conclusion as to the defendant's character.

Since only felonies involving the use or threat of physical violence may be considered, the prior convictions proven by the Commonwealth will share two characteristics in common. First, they are serious offenses; second, they are violent in nature. In my view the legislature has determined that a prior criminal record which reveals a pattern of repeated violent crimes of a serious nature should be an aggravating factor in the sentencing determination. Multiple convictions of such crimes would establish not only the defendant's contempt for society's laws, but also his propensity for violent behavior and callous disregard for the sanctity of human life. Such individuals present a clear danger to society and are beyond remorse or rehabilitation.

The Commonwealth's evidence in support of a "significant history" in this matter was patently inadequate. The only evidence offered was that appellant had been convicted of a rape-sodomy in Virginia in 1974. Appellant countered with evidence that he had successfully fulfilled the conditions of his parole following a period of imprisonment. I reject the notion that proof of one prior remote and isolated incident involving a single victim could support the finding of a "significant history" of violent felony convictions as that term is contemplated by the General Assembly.

In the instant case, however, the evidence in support of aggravating circumstance (10), 42 Pa.C.S. § 9711(d)(10), was so overwhelming and the evidence offered in mitigation of the multiple homicides was so vague and unconvincing that I am satisfied that the jury's balancing of aggravating and mitigating circumstances would not have been significantly affected by the exclusion of a finding of aggravating circumstance (9) from the weighing process. Moreover, its erroneous inclusion was in my judgment under these circumstances harmless. I, therefore, concur in the result reached by the majority.

FLAHERTY, J., joins in this concurring opinion.