554 A.2d 27

**COMMONWEALTH of Pennsylvania**

v.

**Roderick Herman FREY, Appellant.**

**No. 81-3-393.**

Supreme Court of Pennsylvania.

Argued Sept. 26, 1988.

Decided Feb. 3, 1989.

Reargument Denied April 25, 1989.

Penn B. Glazier, Lancaster, for appellant.

Henry S. Kenderdine, Jr., Dist. Atty., John A. Kenneff, Asst. Dist. Atty., Robert A. Graci, Chief Deputy Atty. Gen., Brian P. Gottlieb, Deputy Atty. Gen., for appellee.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., for amicus curiae, The Pennsylvania Dist. Attorney's Assoc.

Frederick D. Giles, Grantville, for amicus curiae, D. Michael Fisher, Senator, 37th Senatorial Dist., and Jeffrey E. Piccola, Representative, 104th House Dist.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On May 14, 1980, Roderick Herman Frey was convicted of murder in the first degree in connection with the contract-murder of his wife. A verdict of death was returned by the jury pursuant to 42 Pa.C.S. § 9711(f). On appeal, the sentence of death was affirmed. *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984), cert. denied, 469 U.S. 963,

105 S.Ct. 360, 83 L.Ed.2d 296 (1984). Subsequently, a motion for a new trial was denied, and, on appeal, the sentence was again affirmed. *Commonwealth v. Frey*, 512 Pa. 557, 517 A.2d 1265 (1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987). A warrant for Frey's execution was then issued by the Governor, following which Frey filed a petition for post-conviction relief. The petition and accompanying request for a stay of execution were denied by the court below. The present appeal ensued. On June 9, 1988, this Court granted a stay of execution pending appeal.

■ The first contention raised by appellant is that statutory authority in this Commonwealth for inflicting the death penalty by means of electrocution is no longer valid. We do not agree. It is to be noted at the outset, however, that the validity of the sentence of death is not tied to the method of imposition. *Commonwealth v. Terry*, 513 Pa. 381, 408, 521 A.2d 398, 412 (1987), cert. denied, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987).

The legislature has designated electrocution as the method of execution to be employed in effectuating sentences of death. Act of June 19, 1913, No. 338, P.L. 528, 61 Pa.S. §§ 2121–2129 (hereinafter Act of 1913). The Act of 1913 sets forth a comprehensive procedure governing the execution process, beginning with the following provision:

> Every person, his aiders, abettors and counsellors, hereafter convicted of the crime of murder of the first degree, shall be sentenced to suffer death in the manner herein provided, and not otherwise. Such punishment, in every case, must be inflicted by causing to pass through the body of the convict a current of electricity of intensity sufficient to cause death, and the application of such current must be continued until such convict is dead. The said punishment shall be inflicted by the warden or deputy warden of the Western Penitentiary, or by such person as the warden shall designate, and shall be inflicted in a

building to be erected on the land owned by the Commonwealth....

61 Pa.S. § 2121.

Successive sections of the Act of 1913 prescribe transmittal of the trial transcript to the Governor, issuance of a warrant to proceed with the execution, confinement and visitation of the prisoner, observation of the execution, certification of the completed execution, postmortem examination and disposition of the body, and payment of expenses associated with the execution. 61 Pa.S. §§ 2122–2128. Finally, in 61 Pa.S. § 2129, there appears the following provision:

This act is intended to furnish a comprehensive and complete method of inflicting the death penalty. If any portion of this act shall be declared invalid or unconstitutional by the Supreme Court of Pennsylvania, the entire act shall thereupon be null and void.

Relying upon this provision, and asserting that the first clause in 61 Pa.S. § 2121, supra is a mandatory sentencing provision that this Court has declared unconstitutional, appellant claims that the Act of 1913 is null and void in its entirety. Appellant has failed to bring to our attention, however, any decision in which the Supreme Court of Pennsylvania has addressed any of the provisions of the Act of 1913 and declared them invalid or unconstitutional. Indeed, this Court has never rendered such a decision. Our opinion in *Commonwealth v. Terry*, 513 Pa. at 408, 521 A.2d at 412, insofar as it contained brief dictum indicating that the Act of 1913 contained a mandatory sentencing provision that had been declared unconstitutional, was lacking in accuracy.

This Court has vacated sentences of death and imposed sentences of life imprisonment in cases where death sentences were imposed under procedural statutes that were violative of the Eighth and Fourteenth Amendments. None of these cases involved the Act of 1913. Rather, most were decided under the Act of June 24, 1939, P.L. 872, § 701, as amended, 18 Pa.S. § 4701, a sentencing procedures statute which, although allowing imposition of sentences of either

life imprisonment or death in connection with convictions for murder of the first degree, did not meet constitutional standards set forth in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (discretion of the sentencing authority must be adequately channeled to avoid arbitrary action). See *Commonwealth v. Dobrolenski*, 460 Pa. 630, 334 A.2d 268 (1975); *Commonwealth v. Martin*, 465 Pa. 134, 348 A.2d 391 (1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976); *Commonwealth v. Bradley*, 449 Pa. 19, 295 A.2d 842 (1972); *Commonwealth v. Ross*, 449 Pa. 103, 296 A.2d 629 (1972); *Commonwealth v. Sharpe*, 449 Pa. 35, 296 A.2d 519 (1972). Others were decided under section 1311 of the Sentencing Code of 1974, 18 Pa.C.S. § 1311, which, though unconstitutional in itself, had been enacted in an effort to cure the defects in sentencing procedures illuminated by the decision in *Furman*, supra. *Commonwealth v. Moody*, 476 Pa. 223, 382 A.2d 442 (1977), cert. denied, 438 U.S. 914, 98 S.Ct. 3143, 57 L.Ed.2d 1160 (1978); *Commonwealth v. Davis*, 479 Pa. 274, 388 A.2d 324 (1978). See also *Commonwealth v. McKenna*, 476 Pa. 428, 433–37, 383 A.2d 174, 177–79 (1978) (history of legislative efforts to enact a constitutionally valid sentencing statute). At no time, however, has this Court declared any provision of the Act of 1913 invalid or unconstitutional.

It is clear, of course, that mandatory sentences of death do not meet constitutional standards. *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Commonwealth v. Moody*, 476 Pa. at 232–33, 382 A.2d at 446–47; *Commonwealth v. Cross*, 508 Pa. 322, 333–36, 496 A.2d 1144, 1150–52 (1985). If the language in 61 Pa.S. § 2121 were construed as a mandatory sentencing provision, and if it were deemed to be still in effect, we would have no alternative but to declare it unconstitutional.

However, as stated in *Commonwealth v. Terry*, supra, the current sentencing statute, 42 Pa.C.S. § 9711, was enacted to correct constitutional deficiencies in sentencing procedures. The constitutionality of 42 Pa.C.S. § 9711 has been upheld. *Comonwealth v. Zettlemoyer*, 500 Pa. 16, 454

A.2d 937 (1982), cert. denied, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). Appellant was sentenced in accordance with this statute, rather than under the Act of 1913. Indeed, the Act of 1913 has not been interpreted as a sentencing statute, but rather as a statute which merely defines the method to be utilized for inflicting the death penalty. Prior to the Act of 1913, death sentences were carried out by means of hanging rather than electrocution. As stated in *Commonwealth v. Meyers*, 290 Pa. 573, 585, 139 A. 374 (1927), "The Act of 1913 did nothing more than provide that, in cases where death was fixed as the penalty, the method of executing the sentence should be electrocution." See also 61 Pa.S. § 2129, supra ("This act is intended to furnish a comprehensive and complete *method* of inflicting the death penalty." (emphasis added)). Thus, we are not persuaded by appellant's argument that the introductory language contained in the Act of 1913, to wit, the first clause of 61 Pa.S. § 2121, supra, insofar as it recites that every person convicted of murder of the first degree shall be sentenced to death, constitutes a mandatory sentencing provision. As discussed in *Commonwealth v. Meyers*, 290 Pa. at 584–85, 139 A. at 378–79, this language was merely a prefatory recitation of the penalties existing under another statute at the time the Act of 1913 was adopted. ·

■ However, even assuming *arguendo* that the language in question had been construed as a sentencing provision, we would have no occasion to now declare it unconstitutional, since it is no longer in effect. Subsequent sentencing statutes, e.g., 42 Pa.C.S. § 9711, have, by eliminating mandatory sentences of death, clearly supplanted the challenged provision. See 1 Pa.C.S. § 1936 (statute latest in enactment must prevail). In light of these statutory modifications, the Act of 1913 must be read as if amended to state: "Every person convicted of the crime of murder of the first degree, and sentenced to death thereon, shall be executed in the manner herein provided, and not otherwise." This comports, too, with a presumption the legislature would not have enacted valid death penalty

sentencing procedures, 42 Pa.C.S. § 9711, without having in place a method for carrying out sentences of death. 1 Pa.C.S. § 1922(1) (presumption legislature does not intend a result that is absurd, impossible of execution, or unreasonable). In short, the legislature has removed the challenged provision from operation prior to there being any occasion for this Court to address its validity. It cannot be said, therefore, that any portion of the Act of 1913 has been, or should be, declared unconstitutional.[1]

■ The next contention raised by appellant is that the jury instructions and verdict slip employed in the penalty phase of trial must be deemed deficient in light of the recent decision of the Supreme Court of the United States in *Mills v. Maryland,* 486 U.S. ——, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). This contention is without merit. In *Mills,* the jury instructions and verdict slip utilized at trial contained specific elements of language and form that created a substantial risk of jurors being misled to believe that, unless they agreed unanimously on the existence of any given mitigating circumstance, the circumstance could not be taken into account by any of the jurors during deliberations. 486 U.S. at ——, 108 S.Ct. at 1870, 100 L.Ed.2d at 400. The *Mills* decision is simply inapposite to the present case, however, for the jury instructions and verdict slip used in appellant's trial did not contain language similar to that found in *Mills.*

The present instructions did not express a need for unanimity in determining the existence of mitigating circumstances. (N.T. 1388–91). Nor did the form of the verdict slip infer a need for such unanimity.[2] The jury instructions

1. In view of this determination, we need not address the Commonwealth's contention that the non-severability provision set forth in 61 P.S. § 2129, supra was later repealed by statutory construction legislation, 46 P.S. § 555 and 1 Pa.C.S. § 1925.

2. The following is a reproduction of the verdict slip returned by the jury at the penalty hearing:

and verdict slip closely followed language in the sentencing statute stating that a unanimous verdict is necessary as to the ultimate decision to impose a sentence of death, 42 Pa.C.S. § 9711(c)(1)(v), but did not state or infer a requirement that any given mitigating circumstance must be unanimously recognized before it can be weighed against aggravating circumstances in reaching a verdict. See 42 Pa.C.S. § 9711(c)(1)(iv) ("[T]he verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances."). Thus, individual jurors were free to weigh whatever mitigating circumstances they perceived,

**SENTENCING VERDICT**

AND NOW, _May 15_, 1980, we the jurors empaneled
          (Insert date)

in the above captioned case unanimously sentence the defendant to

_DEATH_
(Insert either death or life imprisonment)

If the sentence is death complete the following portion.

(check only one block)

We the jury have found unanimously

☐  At least one aggravating circumstance and no mitigating circumstance. The aggravating circumstance(s) (is) (are)

_____

_____

_____

☒  One or more aggravating circumstances which outweigh any mitigating circumstances. The aggravating circumstance(s) (is) (are)

_Murder by Contract_

_____

_____

[ JURORS' SIGNATURES ]

regardless of whether other jurors agreed that those circumstances were established by the evidence. The perceptions of even one juror, alone, with regard to mitigating circumstances, would be sufficient to deny the unanimity required for a sentence of death.

Many of the remaining issues raised in this appeal warrant only brief discussion, for they are clearly lacking in substance. Inasmuch as this is the third time that this Court has been called upon to address appellant's sentence of death on appeal, issues having greater substance have, in the main, been resolved in the earlier appeals.

■ Appellant contends that the verdict slip employed in the penalty phase of trial was defective in that it did not require the jury to list any mitigating circumstances found. It is already well settled, however, that there is no requirement that mitigating circumstances be listed. *Commonwealth v. Carpenter*, 511 Pa. 429, 444, 515 A.2d 531, 539 (1986).

Appellant asserts that no instruction was given by the court indicating that a sentence of life imprisonment would be imposed if the jury failed to reach a unanimous verdict. This assertion is plainly contradicted by the record. (N.T. 1391).

■ It is further claimed by appellant that our decision in one of his earlier appeals, *Commonwealth v. Frey*, 504 Pa. at 440–41, 475 A.2d at 706, wherein we held that the fact that appellant was 42 years of age when he committed this crime could not in itself be regarded as a mitigating circumstance, unconstitutionally prevented the jury from considering factors such as "mid-life crisis," "marital discord and tension," and appellant's record of having "lived 42 years without being convicted of any criminal offense." This claim is patently lacking in basis.

Appellant was permitted to introduce evidence of his age at the penalty hearing, and the jury was instructed that the "youth or advanced age" of the defendant could be considered as a mitigating circumstance. The claim of error

addressed in his earlier appeal involved a challenge to the court's instruction that the jury could consider the "youth or advanced age" of the defendant, as opposed to simply the defendant's "age." We held, in essence, that there is nothing inherently mitigating about the age of 42 that would have rendered the instruction inadequate. It follows, therefore, that the jury was not unconstitutionally restricted in its consideration of mitigating factors. Evidence, to the extent any was introduced, relating to factors recited above such as emotional crisis, marital disharmony, and lack of prior criminal convictions would plainly have been subject to full consideration as elements of the other mitigating circumstances set forth in the jury instructions. See 42 Pa.C.S. § 9711(e)(2), (3), (5) (addressing extreme mental and emotional factors); 42 Pa.C.S. § 9711(e)(8) ("Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense."); 42 Pa.C.S. § 9711(e)(1) (lack of significant history of prior criminal convictions).

■ Next, appellant raises a group of issues consisting of a plethora of assertions of trial counsel's ineffectiveness. Many of these are restatements of matters addressed in earlier appeals and warrant little further comment. Others consist of allegations that omissions occurred in the presentation of potentially mitigating evidence. Examination of the record reveals, however, that counsel made a competent showing of such mitigating evidence as was available, including the testimony of appellant and testimony of character witnesses.

The allegedly omitted evidence can be classified generally as insignificant, irrelevant, or cumulative. For example, it is claimed that evidence should have been introduced that appellant was a member of the 4H Club and the Lions Club. In view of the seriousness of this crime and the extent of other evidence of character and record presented for the jury's consideration, it is inconceivable that appellant's club memberships could have affected his sentence. Similarly, it is asserted that counsel failed to present evidence that one

of appellant's children had been killed in an automobile accident nearly two years before the present murder, yet examination of the record reveals that this evidence was indeed introduced during the guilt determination phase of trial. (N.T. 1046, 1102). During the penalty phase of trial, counsel moved for admission of all of the defense evidence from the guilt phase. Evidence regarding the death of appellant's child, as well as additional evidence pertaining to appellant's character, reputation, and marital relationship thereby came before the jury for consideration. With regard to his marital relationship, appellant claims evidence in mitigation could have been offered that his wife, the victim in this murder, had been having extramarital affairs. Such evidence would have been of little worth, since there was already evidence in the record that appellant and his wife suffered serious marital problems, and, further, the evidence would have appeared preposterous to the jury and would have undermined appellant's credibility since appellant himself had testified during the guilt determination phase that he was certain that his wife never engaged in extramarital affairs.

It is also claimed that the jury should have been informed that one of appellant's co-conspirators, who fired the fatal shot in this murder, received only a sentence of life imprisonment. Sentencing is a highly individualized matter, and we have already ruled that the cases against appellant's co-conspirators are not similar to appellant's case for purposes of proportionality review. *Commonwealth v. Frey*, 504 Pa. at 444–45, 475 A.2d at 708. The sentence received by a co-conspirator is not a mitigating circumstance as to appellant's role in the crime.

Next, appellant claims his defense was prejudiced by counsel's failure to present the testimony of a certain co-conspirator. This Court has already considered the testimony in question and determined that it would not have affected the verdict. *Commonwealth v. Frey*, 512 Pa. at 565–567, 517 A.2d at 1268–1270.

■ Appellant further asserts that counsel, during his closing argument, misstated the number of mitigating circumstances that might be found in this case. Counsel did, in fact, comment with regard to the number of such circumstances that that there "may be two, or perhaps only one." Yet counsel then proceeded to make an argument encompassing a broad range of factors including references to appellant's age, character, background, record, and the possibility that appellant's actions were the result of duress or coercion. During instructions to the jury on sentencing matters, the court fully informed the jury of the complete range of mitigating circumstances that might be found in this case. Appellant was not prejudiced by counsel's comment.

Counsel's effectiveness is also challenged through cursory arguments that voir dire was inadequate and that inflammatory details of the murder were admitted without objection. We have examined these claims and find no basis for relief.

■ It is also claimed that counsel should have objected when the prosecutor allegedly stated during closing arguments at the guilt determination phase of trial that two of appellant's co-conspirators were not called to testify because they would have invoked the Fifth Amendment. Examination of the record reveals that this claim is without merit. The prosecutor did not say that the co-conspirators *would* have invoked the Fifth Amendment, but rather stated that there were a *number* of reasons for his reluctance to call the co-conspirators to the stand, and that just one of those reasons was the possibility that they *might* assert their Fifth Amendment rights. Further, the prosecutor's comment was merely a response to defense counsel's closing argument in which it was inferred that the prosecution had an obligation to produce the co-conspirators' testimony. Significantly, too, defense counsel's closing argument expressly informed the jury that the co-conspirators might have asserted their rights to remain silent if they had been called by the prosecution as witnesses. Thus, the prosecu-

tor's comment was a mere repetition of information that defense counsel had already disclosed to the jury; hence, there was no basis for objection.

■ The final issue presented for our review concerns the admissibility of testimony given by a prosecution witness, Sharon Bowers, at the penalty hearing. The fact that Bowers had knowledge pertinent to this case was not discovered by investigating authorities until after the close of the prosecution's case at the guilt determination phase of trial; hence, her testimony was offered only at the penalty hearing. Bowers testified that she became acquainted with appellant at her place of employment and stated that appellant often engaged her in conversations about his marital problems. She further testified that during one of these conversations, approximately six months before the present murder, appellant expressed a desire to murder his wife:

> One of the times Rod [appellant] was complaining about Barb [his wife], I remember that he made the remark that he said I would kill the son of a b____ if I knew I could get away with it, and it really surprised me that he said it and, you know, I stopped what I was doing, because we were both always working, you know, back there at the same time. I said oh, come on, Rod, you don't mean that. And he said yes, I do. He said then she couldn't enjoy her money, or it was one of the times he was complaining about financial problems they were having that he made the remark.

It is argued that this testimony should not have been introduced, in that it was assertedly not pertinent to proof of any of the aggravating circumstances enumerated in the sentencing statute. See 42 Pa.C.S. § 9711(d). The record reveals, however, that the court allowed admission of this testimony on grounds it tended to disprove a mitigating circumstance claimed by the defense throughout trial, to wit, that appellant had been coerced and influenced by a co-conspirator. Clearly, the testimony in question did show appellant's uncoerced desire, even months before the mur-

der took place, to end the life of his wife. For this reason, the testimony was properly admitted.

Judgment of sentence affirmed.

NIX, C.J., files a concurring opinion.

LARSEN, J., joins the majority opinion and files a concurring opinion which is joined by PAPADAKOS, J.

NIX, Chief Justice, concurring.

The reasoning employed by the majority to sustain the validity of the Act of 1913, Act of June 19, 1913, No. 338, P.L. 528, 61 P.S. §§ 2121–2129, would boggle the mind of even the residents of Alice's Wonderland. The majority begins this curious journey by distorting the very first sentence of section 1, which provides:

Every person, his aiders, abettors and counsellors, hereafter convicted of the crime of murder of the first degree, *shall be sentenced to suffer death* in the manner herein provided, and not otherwise. (Emphasis added.)[1]

Notwithstanding the majority's protestations to the contrary, this language prescribes the punishment as well as the method for its imposition. This position is clearly stated in *Commonwealth v. Meyers*, 290 Pa. 573, 583, 139 A. 374, 378 (1927):

Appellant urges that the Act of 1925 attempted to amend the Act of 1913 by reciting the provisions of section 75 of the Act of 1860 which had been repealed.

1. The full section provides:
   Every person, his aiders, abettors and counsellors, hereafter convicted of the crime of murder of the first degree, shall be sentenced to suffer death in the manner herein provided, and not otherwise. Such punishment, in every case, must be inflicted by causing to pass through the body of the convict a current of electricity of intensity sufficient to cause death, and the application of such current must be continued until such convict is dead. The said punishment shall be inflicted by the warden or deputy warden of the Western Penitentiary, or by such person as the warden shall designate, and shall be inflicted in a building to be erected on the land owned by the Commonwealth in Centre County, whereon the buildings of the new Western Penitentiary are to be built.
   61 P.S. § 2121.

Even if appellant's contention be correct, he would be no better off, *as the Act of 1913 is effective to carry the punishment as it does the method of inflicting it....* (Emphasis added.)

Moreover, a brief history further confirms that the Act of 1913 imposed the punishment as well as the method for its execution. The Act of 1860, section 75, fixed the punishment for murder at death and provided for hanging as the means of executing the sentence. Both the 1860 Act and the Act of 1913 fixed the punishment for murder in the first degree at death. However, the Act of 1913 changed the means of execution from hanging to electrocution. It was not until the Act of 1925 that the punishment was fixed at either death or life imprisonment as the jury may determine.

In fairness to the majority, they were forced into the position articulated today by the holding of the *Meyers* Court. That Court construed the Act of 1860 as being amended by the Act of 1925 and dismissed the Act of 1913 as only having vitality as to prescribing the manner of death. In reaching its result, the *Meyers* Court invalidated the penalty provision which it admitted the Act of 1913 provided and made no effort to reconcile this action with section 12 of the Act of 1913.

Section 12 provides:

This act is intended to furnish a comprehensive and complete method of inflicting the death penalty. If any portion of this act shall be declared invalid or unconstitutional by the Supreme Court of Pennsylvania, the entire act shall thereupon be null and void.

61 P.S. § 2129.

There can be no question that this Court in *Meyers* found that the penalty portion of the Act of 1913 had been superseded by the Act of 1925. This clearly is an invalidation of that portion of the Act of 1913 by this Court. My quarrel with the majority is that candor requires that we acknowledge that section 12 has been offended. No

amount of common law sophistry can gloss over that fact.[2] I am nevertheless constrained to concur in the result in view of the fact that *Meyers* was decided over sixty-one years ago and the General Assembly has been content to treat the Act of 1913 merely as an act prescribing the method of execution. Thus, appellant's argument has long since lost its potency. The legislature obviously has been satisfied with the modification of *Meyers* and has deemed it not to be offensive to the provisions of section 12.

I concur in the result.

LARSEN, Justice, concurring.

I join the majority opinion. Regarding appellant's specious argument that his sentence of death could not be legally executed because the statute adopting electrocution as the method of execution in this Commonwealth is unconstitutional, I join the majority in rejecting said argument for the reasons set forth in my previously filed dissenting opinion to this Court's grant of appellant's application for a stay of execution. I am gratified that the majority has now adopted my views on this issue, albeit belatedly. My previous dissenting opinion is incorporated herein and is set forth below in its entirety, and states as follows:

On June 9, 1988, a majority of the members of this Court, over this writer's dissent, granted petitioner's [appellant's] request to stay his execution that had been scheduled by Governor Casey for June 14, 1988. This stay was granted and oral argument was scheduled for September 26, 1988, in order to allow petitioner [appellant] an opportunity to contest whether the method of execution by electrocution is

**2.** Note the discussion in *Commonwealth v. Meyers*, 290 Pa. 573, 583–585, 139 A. 374, 378 (1927), relating to the effect of the Act of 1913 upon the Act of 1860 resulting in that Court's ultimate conclusion that the Act of 1913 ceased to exist except as to prescribing the method of execution. The *Meyers* Court, by implying the curious distinction between "repealers" and "reenactments," reached this result. *Id.* Today's majority, based upon this questionable predicate, confidently dismisses the first sentence of 61 P.S. § 2121 as being "merely a prefatory recitation of the penalties existing under another statute...." *See* Maj. op. at p. 345.

authorized by law, a question this Court left open in our decision of February 17, 1987 in *Commonwealth v. Terry*, 513 Pa. 381, 408, 521 A.2d 398, 412 (1987). Petitioner [appellant], who did not give the victim in this case—his wife of twenty-three years, and the mother of their three children—an opportunity to contest *her* method of execution,[1] now plays games with the judicial system through his attorneys who waited until the eve of his execution to seek a stay on an issue which he, through his attorneys, was aware existed at least on February 17, 1987, when *Terry* was decided. I would not allow petitioner [appellant] to play such games and I would not have stayed his execution by electrocution, a method of execution which clearly remains the legal and legislatively authorized method of carrying out a sentence of death in this Commonwealth.

This method of execution was established by the legislature by the Act of June 19, 1913, P.L. 528, §§ 1–12, 61 P.S. § 2121–2129 (Purdon's Supp.1988). The Act of 1913 changed the method of execution from hanging to electrocution and set forth the procedures to be followed in carrying out an execution. The Act of 1913 provides in relevant portion:

**Murder in the first degree to be punished by electrocution**

*Every person,* his aiders, abettors and counsellors, *hereafter convicted of the crime of murder of the first degree, shall be sentenced to suffer death in the manner herein provided, and not otherwise.* Such punishment, in every case, must be inflicted by causing to pass through the body of the convict a current of electricity of intensity sufficient to cause death, and the application of such current must be continued until such convict is dead. . . . .

---

**1.** Petitioner [appellant] "contracted" with two men to murder his wife, Barbara Jean Frey, as his solution to their marital difficulties, i.e. their pending divorce and property distribution. On November 7, 1979, with petitioner's [appellant's] planning and assistance, the two men ran his wife's car off of a road, beat her, shot her and set her car on fire, thereby causing her death.

Section 1, 61 P.S. § 2121 (emphasis added). The final section of the Act of 1913, section 12, provides:

**Effect of partial invalidity**

This act is intended to furnish a comprehensive and complete method of inflicting the death penalty. *If any portion of this act shall be declared invalid or unconstitutional by the Supreme Court of Pennsylvania, the entire act shall thereupon be null and void.*

61 P.S. § 2129 (emphasis added).

On a technicality created by these underscored phrases, petitioner [appellant] attempts to "cheat the hangman" (or, in this Commonwealth, the electrocutioner). The first sentence of section 1 requires a sentence of death for "every person ... convicted of the crime of murder of the first degree." Mandatory sentences of death, i.e., sentences imposed wherein the jury (or judge) has been precluded from considering mitigating circumstances concerning the character and record of the defendant and the nature of the offense, have been declared unconstitutional by the United States Supreme Court. *E.g., Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) *and Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Therefore, petitioner [appellant] argues, the mandatory proviso of section 1 of the Act of 1913 requiring the death penalty for *all* convictions of murder of the first degree has been *implicitly* "declared invalid or unconstitutional by the Supreme Court of Pennsylvania" in our decisions striking down the death penalty in this Commonwealth pursuant to those and other decisions of the United States Supreme Court. *See, e.g. Commonwealth v. Moody,* 476 Pa. 223, 382 A.2d 442 (1977); *Commonwealth v. Bradley,* 449 Pa. 19, 295 A.2d 842 (1972); *Commonwealth v. McKenna,* 476 Pa. 428, 383 A.2d 174 (1978). Alternatively, petitioner [appellant] asserts that if our decisions have not *implicitly* struck down as unconstitutional the mandatory proviso of section 1 of the Act of 1913, then we must now do so *explicitly.* In either event, if "any portion of this act [of 1913] shall be declared invalid or unconstitutional by the

Supreme Court of Pennsylvania, the entire act shall thereupon be null and void," section 12, 61 P.S. § 2129, and there would be, in that case, no statutory authorization establishing a method of execution in this Commonwealth.

Petitioner's [appellant's] argument is fatally flawed in its assumption that this Court has declared or must declare the mandatory proviso of section 1 of the Act of 1913 unconstitutional. The Act of May 14, 1925, P.L. 759, gave the jury the authority to determine whether the penalty for a conviction for murder of the first degree should be set at death or life imprisonment. *See Commonwealth v. Meyers*, 290 Pa. 573, 139 A. 374 (1927) (upholding constitutionality of the "split verdict" Act of 1925). This authority to determine whether the punishment for a conviction of murder of the first degree should be death or life imprisonment has been repeatedly granted the jury or court since that time through subsequent legislative enactments, including the Act of June 24, 1939, P.L. 872, the Act of December 6, 1972, P.L. 1482, No. 334, and the Act of March 26, 1974, P.L. 213, No. 46. These enactments maintained the sentence for murder of the first degree as either death or life imprisonment, and established sentencing procedures for arriving at the appropriate sentence. It was *these sentencing procedures* that have been declared invalid by this Court. *Moody; Bradley; McKenna*. The current legislative enactment regarding sentencing procedures for murder of the first degree is set forth at 42 Pa.C.S.A. § 9711, and was enacted by the Act of September 13, 1978, P.L. 756, No. 141. In *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), this Court upheld the constitutionality of this enactment which provides, inter alia, that after a verdict of murder of the first degree is recorded, the jury (or judge) shall, in a separate sentencing proceeding, sentence the defendant to death or life imprisonment after consideration of relevant aggravating and mitigating circumstances.

It is clear beyond question that these subsequent legislative enactments, including the current, valid enactment set

forth in 42 Pa.C.S.A. § 9711, are in *pari materia* with and have in effect deleted the mandatory proviso of section 1 of the Act of 1913. This is made exceedingly clear by the Statutory Construction Act of 1972, 1 Pa.C.S.A. §§ 1501–1991. Legislative intent controls, of course, and the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). Section 12 of the Act of 1913 states that: "This act is *intended to furnish a comprehensive and complete method of inflicting the death penalty.*" 61 P.S. § 2129.

It is apparent that the Act of 1913 was not intended to fix for all time the penalty for all convictions of murder of the first degree at death, but was rather concerned solely with establishing the manner of execution *when* a sentence of death was imposed. As this Court stated in upholding the constitutionality of the so-called "split verdict" Act of 1925, the "Act of 1913 did nothing more than provide that, *in cases where death was fixed as the penalty,* the method of executing the sentence should be electrocution." *Commonwealth v. Meyers, supra* at 290 Pa. 585, 139 A. 374. The first sentence of section 1 of the Act of 1913 must therefore be seen for what it unquestionably is—prefatory language which was in line with the prevailing substantive law at the time of enactment which set the punishment for all murders of the first degree at death, and which merely "set the stage" for the remainder of the Act which deals exclusively with the "comprehensive and complete method of inflicting the death penalty."

In light of the subsequent statutes on death penalty sentencing procedures *which must be read in pari materia with the Act of 1913,* section 1 of that Act must now be read as if amended to state: "every person convicted of murder of the first degree, *and sentenced to death thereon by a jury or judge,* shall be executed in the manner herein provided, and not otherwise." This is made clear through several rules of statutory construction, namely:

### § 1922. Presumptions in ascertaining legislative intent

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

(2) That the General Assembly intends the entire statute to be effective and certain.

(3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth....

\* \* \* \* \* \*

### § 1932. Statutes in pari materia

(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

(b) Statutes in pari materia shall be construed together, if possible, as one statute.

\* \* \* \* \* \*

### § 1936. Irreconcilable statutes passed by different General Assemblies

Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail.

It would be absurd and unreasonable to suggest that the General Assembly, in enacting statutes setting the penalty for murder of the first degree at death *or life imprisonment* and establishing elaborate sentencing procedures for making such determination, nevertheless intended that *every person* convicted of murder of the first degree would be electrocuted pursuant to section 1 of the Act of 1913, although this is the construction which petitioner [appellant] urges upon us. Such a construction would, moreover, require us to find that the General Assembly intended to

violate the constitutions of this Commonwealth and the federal government by not amending section 1 of the Act of 1913. Obviously, the subsequent legislative enactments setting the penalty for murder of the first degree at death or life imprisonment are irreconcilable with, and have therefore *necessarily* deleted, the mandatory proviso of section 1 of the Act of 1913.

Furthermore, the non-severability proviso of section 12 of the Act of 1913 has also been repealed by the Statutory Construction Act of 1972, which provides in relevant part:

### § 1925. Constitutional construction of statutes

*The provisions of every statute shall be severable. If any provision of any statute* or the application thereof to any person or circumstance *is held invalid, the remainder of the statute,* and the application of such provision to other persons or circumstances, *shall not be affected thereby,* unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent. (emphasis added).

\* \* \* \* \* \*

### § 1971. Implied repeal by later statute

(a) Whenever a statute purports to be a revision of all statutes upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for such former statute, such statute shall be construed to supply and therefore to repeal all former statutes upon the same subject.

(b) Whenever a general statute purports to establish a uniform and mandatory system covering a class of sub-

jects, such statute shall be construed to supply and therefore to repeal pre-existing local or special statutes on the same class of subjects.

(c) In all other cases, a later statute shall not be construed to supply or repeal an earlier statute unless the two statutes are irreconcilable.

Under the Statutory Construction Act of 1972, therefore, even if this Court were to declare the mandatory proviso of section 1 of the Act of 1913 invalid or unconstitutional, that proviso would be severed from the Act, leaving intact the remaining procedures concerning the method of execution.

Finally, I know of no reason why the method of execution would have to be established by the legislature. In the absence of a valid legislative scheme regarding the method of execution, it would seem to me that the judiciary or the executive branches of government would have the inherent, constitutional authority to "fill the gap" and set the method of execution by any means which did not constitute cruel and unusual punishment.

Petitioner's [appellant's] argument that he cannot be executed by means of electrocution is, therefore, a meritless, technical argument which evaporates upon scrutiny and it should not take protracted litigation to reach this conclusion. The argument should have been immediately addressed and laid to rest by this Court to eliminate this procedural ploy as a delaying weapon in the arsenal of those who seek to avoid society's ultimate punishment for their aggravated taking of another's life through ceaseless frivolous appeals, motions, petitions and writs. I dissent to the majority's willingness to go along with these delaying tactics by indulging such frivolous petitions—imposition of the death penalty is far too serious a business to tolerate such procedural games.

**[End of dissenting opinion]**

PAPADAKOS, J., joins in this concurring opinion.