608 A.2d 18

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Daniel L. CRISPELL, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 24, 1991.

Decided April 30, 1992.

---

F. Cortez Bell, III, Public Defender, Clearfield, Pa., for appellant.

Frederic J. Ammerman, Dist. Atty., Clearfield, Pa., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

238

LARSEN, Justice.

On June 22, 1990, Appellant, Daniel Crispell, was convicted by a jury of murder of the first degree, kidnapping, robbery, theft by unlawful taking and criminal conspiracy. Following this, a sentencing hearing was held pursuant to the Sentencing Code, 42 Pa.C.S.A. § 9711 during which the prosecution presented evidence as to the aggravating circumstance "[t]he defendant committed the killing while in the perpetration of a felony". 42 Pa.C.S.A. § 9711(d)(6). The defense presented evidence that Appellant was only eighteen (18) at the time of the crime, 42 Pa.C.S.A. § 9711(e)(4), and that Appellant was remorseful. 42 Pa. C.S.A. § 9711(e)(8). The jury determined that the aggravating circumstance outweighed the mitigating circumstances and unanimously sentenced Appellant to death. Appellant filed post trial motions which were denied by the trial court. This direct appeal followed.

Appellant and his accomplice, Christopher Weatherill, kidnapped Mrs. Ella M. Brown in her own car from a mall in Dubois, Pennsylvania, and took her to a deserted area where she was stabbed to death. Appellant and Weatherill fled in Mrs. Brown's car which was later discovered by the police in Tucson, Arizona. The Tucson police arrested both Appellant, after he attempted to steal an elderly woman's purse, and Weatherill, as he lay sleeping in Mrs. Brown's car. Appellant and Weatherill were returned to Pennsylvania and were charged with murder, kidnapping, robbery, theft by unlawful taking and conspiracy.

 Although Appellant does not argue that the evidence was insufficient to sustain his conviction for murder of the first degree, we are required to review all death penalty cases for the sufficiency of the evidence. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), cert. denied, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), reh'g denied, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). Viewing the evidence in the light most favor-

able to the Commonwealth we conclude that it was sufficient to sustain Appellant's conviction for murder of the first degree.

Appellant raises several issues for our review. Appellant argues that the trial court erred in failing to grant his motion for a change of venue following the publication of a newspaper article which contained the district attorney's opinion that he was guilty of murder. The article published on May 2, 1990, stated that the district attorney had accepted the accomplice, Weatherill's plea of guilt to second degree murder, because "he [the district attorney] felt Mr. Crispell [Appellant] was the one who actually committed the murder". Appellant asserts that the article prejudiced him in the selection and impaneling of a fair jury.

"The grant or denial of a change of venue is a matter within the sound discretion of the trial court, and its exercise will not be disturbed by an appellate court in the absence of an abuse of discretion." *Commonwealth v. Faulkner*, 527 Pa. 57, 595 A.2d 28 (1991) quoting *Commonwealth v. Buehl*, 510 Pa. 363, 375–76, 508 A.2d 1167, 1173 (1986). Generally, our review is limited to determining whether "any juror formed a fixed opinion of [the defendant's] guilt or innocence as a result of the pre-trial publicity". *Commonwealth v. Tedford*, 523 Pa. 305, 567 A.2d 610, 618 (1989) quoting *Commonwealth v. Kichline*, 468 Pa. 265, 274, 361 A.2d 282, 287 (1976).

Customarily the party challenging an order denying a motion for change of venue must demonstrate actual prejudice. *Faulkner*, 528 Pa. at 80, 595 A.2d at 40 (citing *Commonwealth v. Bachert*, 499 Pa. 398, 453 A.2d 931 (1982), cert. denied, 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983). However, there are times when the pretrial publicity is so pervasive and so inflammatory that the accused is relieved of his normal burden of establishing actual prejudice. *Tedford*, 523 Pa. at 324, 567 A.2d at 619;

*Commonwealth v. Casper,* 481 Pa. 143, 392 A.2d 287 (1978).

In *Casper* we recognized that in order to find a presumption of prejudice "exceptional circumstances" must be present, and that "generalizations in this area are difficult because 'each case must turn on its special facts'". *Id.,* 481 Pa. at 151, 392 A.2d at 291. With this in mind we compiled a list of factors which may give rise to a presumption of prejudice:

> ... whether the pre-trial publicity was, on the one hand, factual and objective, or on the other hand, consisted of sensational, inflammatory, and "slanted article demanding conviction," (citation omitted); whether the pre-trial publicity revealed the existence of the accused's prior criminal record; whether it referred to confessions, admissions or reenactments of the crime by the defendant; and whether such information is the product of reports by the police and prosecutorial officers. (footnotes omitted).

*Id.,* 481 Pa. at 152–153, 392 A.2d at 292. (Other factors to be considered are whether the pretrial publicity is pervasive and whether a cooling-off period between the publicity and the commencement of trial has taken place.) *Id.*

The third factor in *Casper,* "whether such information is the product of reports by the police and prosecutorial officers", was derived from our holding in *Commonwealth v. Pierce,* 451 Pa. 190, 303 A.2d 209 (1973). In *Pierce* we determined that a change of venue was required where pretrial publicity included: 1) information released by the authorities that the defendant was the "triggerman" with a prior criminal record and; 2) a reenactment of the crime staged by the police. In *Pierce,* we prohibited the police or prosecutorial officers from releasing to the news media, in addition to other matters, "any *inflammatory* statements as to the merits of the case, or the character of the accused" and held that failure to comply with this prohibition "can operate to deprive an accused of due process of law." *Id.,* 451 Pa. at 200, 303 A.2d at 211. (emphasis added).

Subsequently, in *Commonwealth v. Cohen,* 489 Pa. 167, 413 A.2d 1066 (1980) we determined that the prosecutor "announced his opinion on appellant's guilt" in an inflamma-

tory manner in violation of *Commonwealth v. Pierce* by stating that he wanted to be standing next to the defendant when the "switch was pulled", which statement was simultaneously publicized. In *Cohen* we held that since prejudicial pretrial material, including the "pull the switch" statement was widely disseminated at the time of trial, a change of venue was required. (The record in *Cohen* included evidence of thirty-eight newspaper article publications and thirty-eight radio and television broadcasts from November of 1974 through May of 1975. Of 169 prospective jurors questioned regarding pre-trial publicity, 89 or 53 percent, were excused because they had formed a fixed opinion as to the defendant's guilt.)

The statement of the district attorney in the instant case was factual and objective and indeed, the citizens of Clearfield County were entitled to know what their elected official was doing. Neither *Pierce* nor *Cohen* mandate a presumption of prejudice in every case where a prosecutor's expression of opinion as to the defendant's guilt is publicized. A prosecutor conveys his view as to the defendant's guilt each time he charges a particular person with a crime. Instead, it is the sensational, inflammatory, slanted towards conviction comments which are proscribed by prior caselaw and which may, in some cases, deprive the defendant of a fair trial. Moreover, the pretrial publicity in this case unlike that in *Pierce* and *Cohen* was not pervasive. Aside from the article in question, Appellant has failed to inform this court of any other instances of pretrial publicity. In this case a presumption of prejudice is not warranted.

Nor has Appellant shown actual juror prejudice. The trial court permitted the individual voir dire of forty-one prospective jurors. Of the twenty-seven prospective jurors questioned regarding pre-trial publicity, nineteen responded that they had read or heard about the case but stated that they had not formed a fixed opinion as to Appellant's guilt and could be impartial. Two prospective jurors testified that they had formed a fixed opinion regard-

ing Appellant's guilt and were excused from jury service. It is clear that Appellant was not prejudiced in the impaneling and selection of the jury.

Appellant argues next that the trial court erred in refusing to grant his motion for mistrial based upon the publication of a newspaper article on the first day of trial following jury selection which contained a statement of Appellant's accomplice (Weatherill) implicating Appellant in the murder of Mrs. Brown.

In this case jury selection was complete on June 18, 1990, and the jury was not sequestered. The newspaper article in question was published on June 19, 1990, and said: "In a statement to the police, Crispell [Appellant] said that Weatherill did the stabbing. Weatherill said it was Crispell." (Weatherill had pled guilty to murder of the second degree but withdrew his guilty plea.) On June 20, 1990, defense counsel filed the motion for mistrial based upon the publication of the newspaper article and a motion for individual voir dire of the jurors as to the reading of the newspaper article. The trial court did not question the jurors as to whether they read the newspaper article and denied Appellant's request for a mistrial.[1]

In *Commonwealth v. Bruno,* 466 Pa. 245, 352 A.2d 40 (1976) we held that:

> When there is a possibility of highly prejudicial materials reaching the jury, the trial court must take appropriate protective action. Although the proper precautions are inevitably dictated by the circumstances of each case, they must reasonably ensure that no prejudice will occur.

* * * * * *

1. Appellant did not include the trial court's failure to grant his motion for individual voir dire of the jurors in post trial motions or in his arguments to this Court. Nevertheless, given our relaxation of the waiver rules in death penalty cases, *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), cert. denied, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983) reh'g denied, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983), we will address the merits of the issue.

The preferred procedure when highly prejudicial material is publicized during the trial and the jury is not sequestered is to question the jurors individually, out of the presence of the other jurors. (citations omitted) However, questioning jurors as a group or giving special precautionary instructions may be sufficient precaution depending on the facts of the particular case. (citations omitted).

*Id.*, 466 Pa. at 267–268, 352 A.2d at 52. In *Bruno* the details of the defendant's suppressed confession were widely publicized in front page newspaper articles and news broadcasts. The trial court gave an inadequate precautionary instruction to the jury—suggesting rather than directing that jurors refrain from reading, watching, or listening to news accounts. We determined that the trial court abused its discretion in refusing repeated requests from defense counsel that the jurors be questioned concerning their exposure to the publicity.

In *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128, (1980) cert. denied, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981), a newspaper article published on the eighth day of trial contained a "damaging" admission by the defendant and information derived from the prosecutor's office (in violation of a court order prohibiting communication with the press) as to why the admission would not be used at trial. In *Miller* we upheld the trial court's refusal to grant a mistrial distinguishing *Bruno* as follows:

Instantly, we are concerned with the impact of one news article published during the course of the trial, not continued and pervasive inflammatory publicity. The article was located on page two of the newspaper where it could not be seen as the result of a casual glance. The article did contain the substance of a damaging admission by Miller, which, while it had not been suppressed, had been excluded from the trial by agreement of Miller's counsel and the district attorney. While exposure of the jury to this material could have prejudiced fair consideration of the evidence before the jury, it is important to note the

jury had already been exposed to the admission during the prosecutor's opening statement. At the time counsel agreed to exclude the statement from the trial, the jury was given a cautionary instruction not to consider the statement. Under these circumstances, we conclude the trial court took sufficient precautions to protect the integrity of the trial.

*Id.,* 490 Pa. at 466, 477, 417 A.2d at 133.

■ As in *Miller,* we are concerned here with the "impact of one newspaper article published during the trial, not continued and pervasive inflammatory publicity." *Id.* Although the content of the newspaper article would have been inadmissible had it been offered as evidence at trial, *Commonwealth v. McDowell,* 460 Pa. 474, 333 A.2d 872 (1975), exposure of the jury to its content could not have prejudiced Appellant. In the within case the Commonwealth sought a jury instruction that flight after a crime is circumstantial evidence of consciousness of guilt. Appellant testified that his accomplice (Weatherill) stabbed Mrs. Brown and threatened to blame Appellant for the murder if Appellant did not help him. Appellant also testified that he fled to Arizona and failed to contact the police because he was afraid that he would be blamed for the murder. The content of the newspaper article was consistent with Appellant's own testimony at trial and supported his theory of defense. The trial court did not abuse its discretion in failing to grant a mistrial or question the jurors as to whether they read the newspaper article.

■ Moreover and additionally, the jurors were individually instructed not to read newspaper articles, watch television, or listen to radio broadcasts about the case. On June 20, 1990, the morning after the newspaper article was published, the trial court reiterated this instruction to jurors as a group and also told them that they should inform the court as soon as possible should they read any news accounts about the case. This would have given any juror who read the newspaper article of the prior day an opportunity to so inform the court. Additionally, the trial court

instructed jurors that they were required to determine the facts of the case based upon the evidence and testimony that they heard during the course of the trial. Thus, the trial court gave sufficient precautionary instructions to insure the integrity of the trial.

Appellant also argues that a mistrial should have been granted when a witness for the prosecution testified that Weatherill had implicated Appellant for the murder of Mrs. Brown. Appellant distorts the issue. Prior to trial Appellant confessed to Donald Skinner, a fellow prisoner with whom he shared a cell, that he stabbed Mrs. Brown with a knife and dragged her body into the woods. T.T. 6/20/90 at pp. 81–84. Skinner was called to testify on behalf of the prosecution and was asked: "Initially what did he [Appellant] tell you?" Skinner responded: "That someone else was blaming him for something". T.T. 6/20/90 at p. 80. Defense counsel objected and made a motion for a mistrial which was denied by the trial court. Although the statement of Skinner was irrelevant and thus inadmissible, Appellant was not prejudiced thereby. Moreover, the admission of the statement inured to Appellant's benefit as it was consistent with his theory of defense. This issue is meritless.

Appellant next argues that the trial court erred in failing to grant a mistrial following telephone contact between a reporter from The Bloomsburg Press and members of the jury after jury selection was complete. Appellant argues that the "mere contact" between jurors and third parties required a mistrial. Explicit in the cases involving juror contact is the requirement that the defendant show that he was prejudiced. *See, Commonwealth v. Santiago,* 456 Pa. 265, 318 A.2d 737 (1974); *Commonwealth v. Stewart,* 449 Pa. 50, 295 A.2d 303 (1972).

In this case the trial court was informed by two jurors that the reporter had telephoned them on the evening of June 18, 1990 (the day that jury selection was complete). The reporter was called before the court in chambers with

both counsel present and stated that he had contacted the jurors to get profile information including home address, occupation, and age. Although we condemn any and all contact between members of the press and jurors during an ongoing trial, the juror contact in the present case was innocuous and did not prejudice the defendant.

■■■ Regarding the sentencing phase of the trial, Appellant inartfully argues that his sentence of death was against the weight of the evidence because the jury did not list on the jury verdict slip the mitigating circumstances that it found. We perceive Appellant's argument to be that the sentencing phase of his trial was procedurally defective. However, this court has held that our sentencing code does not require that the jury make specific findings in regard to mitigating circumstances *Commonwealth v. Carpenter*, 511 Pa. 429, 515 A.2d 531 (1986), and that a jury verdict slip which does not require a list of mitigating circumstances is not defective. *Commonwealth v. Frey*, 520 Pa. 338, 554 A.2d 27 (1989).

Appellant's final argument is that the sentence of death was against the weight of the evidence because the jury did not give sufficient consideration to the mitigating circumstances presented. Similarly, in *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1, cert. denied, 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987), the defendant argued that the verdict was against the weight of the evidence because the jury failed to give "due consideration" to the mitigating circumstances presented. In *Banks* we found the defendant's argument patently without merit because under our legislative scheme it is exclusively the function of the jury to determine whether any mitigating factor is to be given determinative weight. *See, Commonwealth v. Fahy*, 512 Pa. 298, 516 A.2d 689 (1986). In this case the jury performed its exclusive function of weighing aggravating and mitigating circumstances in accordance with the sentencing code (42 Pa.C.S.A. § 9711) and the instructions of the trial court.

 Having reviewed the entire transcript of the proceedings, we conclude that the sentence of death in this case was not the product of passion, prejudice or any other arbitrary factor, 42 Pa.C.S.A. § 9711(h)(3)(i), and that the evidence plainly supports the jury's finding of the aggravating circumstances that the Appellant committed the killing while in the perpetration of a felony, 42 Pa.C.S.A. § 9711(h)(3)(ii). After considering the circumstances of the crime, and the character and record of the accused together with the data and information compiled by the Administrative Office of Pennsylvania Courts as to the penalty imposed in similar cases, *See, Commonwealth v. Frey,* and appendix attached thereto, 504 Pa. 428, 475 A.2d 700 (1984), cert. denied, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), we conclude that the sentence of death was not excessive or disproportionate to the penalty imposed in similar cases. 42 Pa.C.S.A. § 9711(h)(3)(iii).

The judgment of sentence is affirmed.[2]

ZAPPALA and CAPPY, JJ., join this opinion and file concurring opinions.

NIX, C.J., dissents.

ZAPPALA, Justice, concurring.

Although I am basically in agreement with the Majority Opinion, I feel compelled to write separately to correct what I believe to be an incorrect statement of the law. Since the error is harmless, I have no problem joining the majority.

Appellant argues that the trial court erred in not requiring the jury to list on the verdict slip used during the sentencing phase of the trial, the mitigating circumstances it found. In concluding that the procedure utilized by the trial judge was not defective, the majority relies upon *Commonwealth v. Frey,* 520 Pa. 338, 554 A.2d 27 (1989).

**2.** The Supreme Court Prothonotary is directed to transmit, as soon as possible, the full and complete record of the trial, sentencing hearing, imposition of sentence and review by this Court to the Governor. 42 Pa.C.S.A. § 9711(i).

However, on February 1, 1989, this Court adopted a rule, effective July 1, 1989, requiring a trial judge in a capital case to furnish to a jury a verdict slip listing the aggravating and mitigating circumstances which the trial judge determined was supported by some evidence. Pa.R.Crim.P. 357. Since appellant's trial was conducted on June 22, 1990, the trial court was required to comply with Rule 357. Clearly then, the trial court erred.

Notwithstanding the trial court's error, I must join the majority because the trial court error was harmless beyond a reasonable doubt. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). In this instance, the jury determined that the aggravating circumstance outweighed the mitigating circumstances. Even though we do not know how many mitigating circumstances the jury found, the verdict may still be upheld. Assuming for the sake of argument that the jury determined that the evidence supported a finding of both mitigating circumstances, our proportionality review supports the sentence of death. Accordingly, in this instance, the alleged error is harmless. Therefore, for this reason, I join the majority opinion.

CAPPY, Justice, concurring.

While I join the majority opinion, I write separately to address one matter of concern. Admittedly, it was within the discretion of the trial court whether to poll the jurors concerning the potentially prejudicial newspaper article published during the trial. However, the better practice would have been for the trial court to poll the jury in an innocuous manner directly after the newspaper article was brought to its attention. This would have resolved the question of potential prejudice immediately. Thus, it would have prevented the need for further attention by the trial court and counsel, as well as the need for this Court to dwell upon the question of whether the contents of the newspaper article were consistent with Crispell's testimony at trial.